UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAHAMITR PRESSURE CONTAINER PLC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 22-00107 |

## COMPLAINT

Plaintiff Sahamitr Pressure Container Plc. (also known as Sahamitr Pressure Container Public Company Limited, "SMPC" or "Plaintiff"), by and through the undersigned counsel, White & Case LLP, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1.　Plaintiff contests the final results issued by the International Trade Administration of the Department of Commerce ("Department") in the first administrative review ("POR1") of the antidumping duty ("ADD") order covering steel propane cylinders from Thailand (Case No. A-549-839).  The period of review ("POR") for POR1 was December 27, 2018 through July 31, 2020.  Notice of the final results was published in the *Federal Register* on March 7, 2022.  *Steel Propane Cylinders from Thailand: Final Results of Antidumping Duty Administrative Review; 2018-2020*, 87 Fed. Reg. 12659 (Mar. 7, 2022) ("*Final Results*"); *see also* accompanying *Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Steel Propane Cylinders from Thailand; 2018-2020* (Mar. 2, 2022) ("*I&D Memo*").

## JURISDICTION

2. The Court of International Trade has jurisdiction over this action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFF

3. Plaintiff is a Thai producer and exporter of merchandise subject to the ADD order at issue. Plaintiff participated in the administrative review that resulted in the contested finding. Plaintiff therefore is an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. The contested determination was published in the *Federal Register* on March 7, 2022. *See Final Results*, 87 Fed. Reg. 12659. Plaintiff is filing a Summons today (April 6, 2022), *i.e.*, within the 30 day time limit specified in 28 U.S.C. § 2636(c). This complaint is being filed simultaneously with the Summons, and thus is timely under 19 U.S.C. § 1516a(a)(2)(A).

## PROCEDURAL HISTORY AND BACKGROUND

5. Pursuant to requests by SMPC, and Petitioners Manchester Tank & Equipment Co. and Worthington Industries (collectively, "Petitioners"), the Department initiated the review for POR1. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 63081, 63085 (Oct. 6, 2020); *Steel Propane Cylinders from Thailand: Request for Antidumping Duty Administrative Review*, Aug. 31, 2020 (ACCESS Barcode 4020840-01); *Steel Propane Cylinders from Thailand: First Annual Review Request*, Aug. 31, 2020 (ACCESS Barcode 4020881-01). During the review, SMPC submitted complete responses to all Department requests for information, including the initial questionnaire ("*Initial Questionnaire*") and multiple supplemental questionnaires.

6. In the preliminary results for the review ("*Preliminary Results*"), the Department assigned SMPC a dumping margin of 14.11 percent. *See Steel Propane Cylinders from Thailand: Preliminary Results of Antidumping Duty Administrative Review; 2018-2020*, 86 Fed. Reg. 49295, 49296 (Sept. 2, 2021); *see also* accompanying *Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: Steel Propane Cylinders from Thailand; 2018-2020* (Aug. 27, 2021) ("*Preliminary Decision Memo*").

7. SMPC argued in its case brief that the Department should correct two ministerial errors and adjust two methodological decisions in the final results. *See generally SMPC Case Brief*, Oct. 14, 2021 (ACCESS Barcode 4171869-01). In the *Final Results*, the Department corrected the two ministerial errors. *See Final Results*, 87 Fed. Reg. 12659; *I&D Memo* at 3-5. However, the Department continued to (a) use a POR-wide allocation for SMPC's certification expenses, which were direct selling expenses reported pursuant to 19 U.S.C. § 1677b(a)(6)(B)(iii) and 19 C.F.R. § 351.410(b)-(c); and (b) reduce SMPC's reported scrap offset, which was an element of the direct material costs reported as part of the cost of production pursuant to 19 U.S.C. § 1677b(b)(3)(A). *I&D Memo* at 7-10. The Department assigned SMPC a final dumping margin of 13.89 percent. The facts relating to the adjustments that the Department declined to make are summarized below.

### POR-WIDE ALLOCATION METHOD FOR CERTIFICATION EXPENSES

8. Under the statute, the Department is required to adjust normal value by the amount of "any difference" between the export price and normal value due to "differences in the circumstances of sale." 19 U.S.C. § 1677b(a)(6)(B)(iii). Commerce's regulations provide that it will make circumstances of sale adjustments for "direct selling expenses," which are expenses that result from and "bear a direct relationship to" a particular sale. 19 C.F.R. § 351.410(b)-(c).

9. In its response to the *Initial Questionnaire*, SMPC reported certification fees as "Other Direct Selling Expenses" incurred on sales of the subject merchandise. *See SMPC Responses to Section B and Section C of the Antidumping Duty Questionnaire*, Dec. 21, 2020 at C-39, Exhibit C-9 (ACCESS Barcode 4068016-01). The certification expenses were reported in Field CERTFEEH in the home-market sales database and Field CERTFEEU in the US sales database. *Id.*

10. SMPC provided clarifying information on these variables in two supplemental questionnaire responses. *See SMPC Response to First Supplemental Section B and Section C Questionnaire*, Apr. 23, 2021 at SSQ-2, SSQ-4 (ACCESS Barcode 4114809-01); *see also SMPC Response to Second Supplemental Section B and Section C Questionnaire*, July 22, 2021 at SSBCQ-1, SSBCQ-2, Exhibit SSBCQ-1 (ACCESS Barcode 4145974-01) ("*Sec. B&C Second Supp. Response*"). In accordance with the Department's request in the second supplemental questionnaire, SMPC reported certification expenses on a market- and month-specific basis. *Sec. B&C Second Supp. Response* at Exhibit SSBCQ-1.

11. In the *Preliminary Results*, the Department disregarded the reported market- and month-specific certification expenses it had specifically requested, and calculated SMPC's dumping margin using the average certification expense for the entire POR in each market. *See Preliminary Sales and Cost Calculation Memorandum for Sahamitr Pressure Container Plc.*, Aug. 27. 2021 at 4 (ACCESS Barcode 4157294-01) ("*Preliminary Cost Memo*"). In its case brief, SMPC argued that the Department's methodology departed from the Department's requirement and practice of using the most detailed transaction-specific expense data available. As a result, the Department calculated a "less accurate and more distorted dumping margin" than if SMPC's reported expenses were used. *SMPC Case Brief* at 5. SMPC noted that the

Department had not provided a reasonable rationale or justification for disregarding the reported data, which was "specific, record-based, and verifiable." *Id*.

12. The Department continued to use the POR-wide allocation method in the *Final Results*, concluding that SMPC's allocation method was not reliable "due to timing differences between when SMPC produces and sells cylinders and when it records the certification expenses associated with those sales." *I&D Memo* at 7. The Department also clarified that it had not *discarded* SMPC's reported certification expenses; rather, it revised the allocation method using the same source data SMPC had used. *Id.* at 7-8. The Department did not explain how using an annual average addressed the "timing differences", which allegedly warranted disregarding the expenses as reported, or why the resulting dumping margin was more accurate.

## DOWNWARD ADJUSTMENT TO SCRAP OFFSET

13. Under the statute, the Department must determine whether sales of the merchandise under review were made at prices below the cost of production. *See* 19 U.S.C. § 1677b(b)(1). Production costs include direct material costs. *See* 19 U.S.C. § 1677b(b)(3)(A).

14. In its questionnaire responses, SMPC explained that its cost accounting system did not include a scrap offset in the ordinary course of business. *See SMPC Response to Section D of the Questionnaire*, Dec. 28, 2020 at D-37 (ACCESS Barcode 4069889-01). A scrap offset reflects the value of scrap that is recovered after production that can be sold, and is considered an offset to the direct material costs incurred during production. Rather than account for the value of scrap as an offset, SMPC treated the value as "other revenue." *Id.* To accurately reflect its production costs, SMPC used the scrap sales value recorded in the ordinary course of business to offset to the cost of direct materials consumed during the POR. *Id.* at D-29, D-34, D-37 and Exhibit D-9; *see also SMPC Response to First Supplemental Section D Questionnaire*, June 2, 2021 at SD-15, SD-16 and Exhibit SD-17 (ACCESS Barcode 4127694-01).

15.     In the *Preliminary Results*, the Department reduced SMPC's reported scrap offset, and thereby increased the overall reported direct material costs and cost of production. *Preliminary Cost Memo* at 5; *see also Preliminary Results Memo* at 10. The Department stated that its practice is to limit the scrap offset to "the value of scrap generated" and concluded, based on its review of the data, that "SMPC sold more scrap than it reasonably could have generated." *Id*. The Department provided a worksheet showing how it calculated the downward adjustment to the scrap offset. In its case brief, SMPC modified and annotated the Department's calculation worksheet to show that SMPC's scrap offset as originally reported was, in fact, "conservative {and} understated," meaning that the Department's downward adjustment "not justified and inappropriate." *SMPC Case Brief* at 8-10 and Attachment 1.

16.     The Department continued to use the downward-adjusted scrap offset in the *Final Results*, stating that the adjustment was intended "to ensure that SMPC's reported scrap offset does not exceed the value of scrap generated{.}" *I&D Memo* at 9. The Department disregarded SMPC's worksheet, instead explaining that it relied on SMPC's yield loss schedule to make its calculations. *Id.* at 10.

## STATEMENT OF CLAIMS

### COUNT 1:  ALLOCATION METHOD FOR CERTIFICATION EXPENSES

17.     Paragraphs 5 through 16 are incorporated by reference.

18.     The Department's decision to use a POR-wide allocation method with respect to SMPC's certification expenses was unsupported by substantial evidence and contrary to law.

19.     SMPC provided the specific data requested by the Department with respect to certification expenses. SMPC's reported month- and market-specific expenses were more reasonable and more accurate than the alternative POR-average expenses calculated by the Department. The Department has a statutory obligation to calculate dumping margins "as

accurately as possible." *See*, *e.g.*, *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995).  The selection of less precise data and a less accurate methodology was, therefore, contrary to law.  It was also inconsistent with the Department's well-established practice with respect to the reporting of direct selling expenses.

## COUNT 2:  SCRAP OFFSET ADJUSTMENT

20. Paragraphs 5 through 16 are incorporated by reference.

21. The Department's decision to reduce the reported scrap offset, thereby increasing the reported direct material costs and cost of production, was unsupported by substantial evidence and not in accordance with law.

22. The evidence on the record does not support the conclusion that "SMPC sold more scrap than it reasonably could have generated."  The Department therefore erred in reducing the reported scrap offset, which increased the reported direct material costs and production costs, ultimately yielding an inaccurate dumping margin.

## PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Enter judgment in favor of Plaintiff;

(B) Hold and declare that the Department's failure to use SMPC's reported certification expenses in the *Final Results* is unsupported by substantial evidence and otherwise not in accordance with law;

(C) Hold and declare that the Department's failure to use SMPC's reported scrap offset is unsupported by substantial evidence;

(D) Remand this matter to the Department to issue revised final results in conformity with the Court's decision; and

(E)   Grant Plaintiff such additional relief as the Court may deem just and proper.

>Respectfully submitted,
>
>/s/ David E. Bond
>David E. Bond
>Ron Kendler
>Danica Harvey
>WHITE AND CASE LLP
>701 Thirteenth Street, NW
>Washington, DC 20005
>(202) 626-3600

Date:  April 6, 2022

# CERTIFICATE OF SERVICE

**SAHAMITR PRESSURE CONTAINER PLC. v. UNITED STATES**
**CIT Court No. 22-00107**

I, David E. Bond of the law firm of White & Case, hereby certify that on or promptly after April 6, 2022, pursuant to CIT Rule 3(f), copies of the Complaint were delivered to the following parties by certified mail, return receipt requested:

**UPON THE UNITED STATES:**

Attorney-in-Charge
International Trade Field Office
U.S. Department of Justice
National Courts Branch
Room 346
26 Federal Plaza
New York, NY 10278

Jeanne Davidson
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

**UPON THE DEPARTMENT OF COMMERCE:**

Leslie Kiernan
General Counsel
U.S. Department of Commerce
Mail Stop 5875 HCHB
14th and Constitution Avenue, NW
Washington, DC 20230

Robert Heilferty
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
1401 Constitution Ave., NW
Washington, DC 20230

                                                  /s/ David E. Bond
                                                    David E. Bond

<u>**NOTICE TO INTERESTED PARTIES**</u>

**SAHAMITR PRESSURE CONTAINER PLC. v. UNITED STATES**
**CIT Court No. 22-00107**

  I, David E. Bond of the law firm White & Case LLP, hereby certify that on or promptly after April 6, 2022, pursuant to CIT Rule 3(f), I notified all interested parties who were a party to the proceeding below, by mailing copies of the foregoing complaint, by certified mail, return receipt requested:

<u>**ON BEHALF OF WORTHINGTON INDUSTRIES**</u>
David C. Smith
**Kelley Drye & Warren LLP**
3050 K Street, NW, Suite 400
Washington, DC 20007

<u>**ON BEHALF OF WORLDWIDE DISTRIBUTION, LLP**</u>
Gregory S. Menegaz
**deKieffer & Horgan**
1090 Vermont Avenue, NW
Suite 410
Washington, DC 20005

                /s/ David E. Bond
                David E. Bond