## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| SAHAMITR PRESSURE CONTAINER PLC., <br><br>       Plaintiff, <br><br> and <br><br> WORLDWIDE DISTRIBUTION, LLLP, <br><br>       Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br>       Defendant, <br><br> and <br><br> WORTHINGTON INDUSTRIES, <br><br>       Defendant-Intervenor. | Court No. 22-00107 |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S RULE 56.2 MOTION
## FOR JUDGMENT UPON THE AGENCY RECORD

David E. Bond
Ron Kendler
Danica Harvey

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

August 16, 2022

# TABLE OF CONTENTS

I.   STATEMENT PURSUANT TO USCIT R. 56.2(c) ...................... 1

    A.   Administrative Determination to Be Reviewed.................. 1

    B.   Question Presented and Summary of Argument .............. 1

        1.   Was the Department's use of a POR-wide allocation for SMPC's certification expenses supported by substantial evidence and otherwise in accordance with law? ...................................................................... 1

II.  STATEMENT OF FACTS ............................................... 3

III. STANDARD OF REVIEW ............................................. 7

IV.  ARGUMENT ................................................................ 9

    A.   The Department's Use of a POR-Average Allocation Method in Place of SMPC's Reported Monthly- and Market-Specific Certification Expenses Was Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law ............................................. 9

V.   CONCLUSION AND RELIEF SOUGHT .................................. 14

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Allegheny Ludlum Corp. v. United States,*
112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) ........................................ 8

*Atlantic Sugar, Ltd. v. United States,*
744 F.2d 1556 (Fed. Cir. 1984) .............................................................. 8

*Burlington Truck Lines, Inc. v. United States,*
371 U.S. 156 (1962) ................................................................................ 8

*Chr. Bjelland Seafoods A/S v. United States,*
19 C.I.T. 35 (1995) ................................................................................. 8

*CS Wind Viet. Co. v. United States,*
832 F.3d 1367 (Fed. Cir. 2016) ........................................................... 11

*Huaiyin Foreign Trade Corp. v. United States,*
322 F.3d 1369 (Fed. Cir. 2003) .............................................................. 8

*Jinan Yipin Corp. v. United States,*
526 F. Supp. 2d 1347 (Ct. Int'l Trade 2007) ....................................... 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ............................................................................... 11

*NSK Ltd. v. United States,*
510 F.3d 1375 (Fed. Cir. 2007) ........................................................... 13

*Rebar Trade Action Coalition v. United States,*
398 F. Supp. 3d 1374 (Ct. Int'l Trade 2019) ...................................... 11

*Universal Camera Corp. v. NLRB,*
340 U.S. 474 (1951) ............................................................................... 7

*USX Corp. v. United States*,
655 F. Supp. 487 (Ct. Int'l Trade 1987) ................................................ 8

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013) ............................................................. 8

## STATUTES AND REGULATIONS

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................... 7

19 U.S.C. § 1677b(a)(6)(C)(iii) ................................................................. 1, 9

19 C.F.R. § 351.401(g) .................................................................................. 7

19 C.F.R. § 351.401(g)(1) ........................................................................ 2, 10

19 C.F.R. § 351.401(g)(2)-(3) ............................................... 2, 4, 10, 11, 12

19 C.F.R. § 351.410(b)-(c) ...................................................................... 1, 10

## LEGISLATIVE MATERIALS

Uruguay Round Agreements Act, Statement of Administrative Action,
H.R. 103-316, vol. 1 (1994),
reprinted in 1994 U.S.C.C.A.N. 4040................................................. 10

## ADMINISTRATIVE DETERMINATIONS

*Antidumping Duties, Countervailing Duties*,
62 Fed. Reg. 27,296, 27,346 (May 19, 1997) ...................................... 11

*Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts
Thereof From France, Germany, Italy, Japan, Romania, Singapore,
Sweden, and the United Kingdom; Final Results of Antidumping
Duty Administrative Reviews*,
63 Fed. Reg. 33,320 (June 18, 1998) ................................................... 12

*Ball Bearings and Parts Thereof from France, Germany, Italy, Japan,
and the United Kingdom*,
71 Fed. Reg. 40,064 (July 14, 2006),
and accompanying Issues & Decision Memorandum.......................... 13

*Certain Orange Juice from Brazil: Final Results of Antidumping Duty*
   *Administrative Review,*
   74 Fed. Reg. 40,167 (Aug. 11, 2009),
   and accompanying Issues & Decision Memorandum.........................12

# I.    STATEMENT PURSUANT TO USCIT R. 56.2(c)

## A.    Administrative Determination to Be Reviewed

Plaintiff Sahamitr Pressure Container Plc. ("SMPC") ("Plaintiff") contests the final results issued by the International Trade Administration of the Department of Commerce ("Department") in the first administrative review of the antidumping duty ("ADD") order on steel propane cylinders from Thailand (Case No. A-549-839) ("*Final Results*") ("POR1 Review").  The period of review ("POR") was December 27, 2018, through July 31, 2020.  Notice of the *Final Results* was published in the Federal Register on March 7, 2022.  Appx1630-1631; *see also* Appx1317-1327.

## B.    Question Presented and Summary of Argument

### 1.    Was the Department's use of a POR-wide allocation for SMPC's certification expenses supported by substantial evidence and otherwise in accordance with law?

The Department is required to adjust normal value by the amount of "any difference" between the export price and normal value due to "differences in the circumstances of sale." 19 U.S.C. § 1677b(a)(6)(C)(iii).  The Department makes such "circumstances of sale adjustments" for "direct selling expenses."  19 C.F.R. § 351.410(b)-(c).  The Department prefers transaction-specific reporting of direct

selling expenses, but uses allocated expenses when such expenses cannot be reported on a transaction-specific basis. *See* 19 C.F.R. § 351.401(g)(1). A respondent must demonstrate that an "allocation is calculated on as specific a basis as is feasible" in light of the data gathered in the ordinary course of business. 19 C.F.R. § 351.401(g)(2)-(3).

SMPC reported certification fees as "other direct selling expenses" incurred on sales of the subject merchandise. SMPC was unable to report these expenses on a transaction-specific basis using the data recorded in the ordinary course of business. Therefore, in accordance with the Department's specific request, SMPC reported the expenses by market and by month. This was "as specific a basis" as was "feasible." Nevertheless, in the *Final Results* the Department disregarded the expenses as reported and used general, POR-average expenses.

In light of the Department's regulations that require respondents to report direct selling expenses as specifically as possible, its determination to use general POR-average expenses in place of SMPC's more specific expenses was unsupported by substantial evidence and otherwise not in accordance with law.

## II.   STATEMENT OF FACTS

Pursuant to requests filed by SMPC and Petitioner Worthington Industries ("Petitioner"), the Department initiated the first administrative review of the ADD order on steel propane cylinders from Thailand on October 6, 2020.  Appx6295, Appx6299.  On November 3, 2020, the Department issued the initial questionnaire ("*Initial Questionnaire*") to SMPC, the sole respondent subject to the review. Appx6013.

SMPC reported in its home-market and US sales databases whether each steel propane cylinder was certified, and the type of certification issued.    Appx2286, Appx2327.    SMPC also reported certification expenses (*e.g.*, testing and inspection services performed by third parties) as direct selling expenses in Field CERTFEEH of its home-market sales database, and Field CERTFEEU of its U.S. sales database.  Appx2352, *see also* Appx2752-2785.  The company attributed certification fees to individual sales by deriving a ratio that it applied to the gross-unit price of each sale.   Appx2352.   In its response to the *Initial Questionnaire*, SMPC provided a worksheet demonstrating how it derived the ratio (allocating certification expenses over revenues) and

3

accounting system screenshots to support the expenses reported. Appx2752-2785.

In its first supplemental sales questionnaire, based on Petitioner's suggestion, the Department requested that SMPC explain how it recorded certification expenses in the ordinary course of business; why SMPC could not record them on a more specific basis; and why SMPC's allocation methodology did not cause inaccuracies or distortions. Appx3450; *see also* Appx3426. Referring to the documentation provided in its *Initial Questionnaire* response, SMPC explained that, because it paid certification fees to outside vendors on a lump-sum basis *after* production and sale of the merchandise, it could not attribute individual certification expenses to individual sales invoices. Appx 3654. SMPC further explained that the expense allocation it had used was "the most accurate basis" on which it could report certification expenses "using the books and records the company maintains in the normal course of business. . . ." *Id.* SMPC highlighted the fact that the Department had accepted this methodology in the original investigation ("OI"). *Id.* Pursuant to the Department's requests, SMPC also provided a sample purchase order, sample invoices, and additional accounting-system

screenshots to demonstrate how SMPC recorded its accounts payable, expenses, and payments relevant to its incurrence of certification expenses. Appx3834-3842.

In its second round of deficiency comments, Petitioner continued to argue that SMPC's certification expense data were insufficiently specific and urged the Department to request market-specific, monthly-specific, and vendor-specific data. Appx4385-4389. In its second supplemental sales questionnaire, the Department requested a list of all vendors that provided certification services; instructed SMPC to revise its sales databases to calculate per-unit certification expenses on a market- and month-specific basis; and requested the invoices corresponding to the largest certification expense in each market during the POR. Appx5587. SMPC complied with each request. Appx5596-5597, Appx5605-5636. The Department did not issue any additional supplemental questionnaires or otherwise instruct SMPC to revise its reporting of certification fees.

Petitioner submitted "pre-preliminary comments" in which it urged the Department to reject the month- and market-specific certification fee reporting that it had specifically requested, and instead

use a POR-wide average certification expense ratio in each respective market.   *See* Appx5707-5710.   SMPC filed rebuttal comments, explaining that there was no justification for the Department to disregard its certification expense data, which was the most specific data feasible using the data recorded in the ordinary course of business. Appx6264-6266.

The Department issued is preliminary results on September 2, 2021 ("*Preliminary Results*"), assigning SMPC a dumping margin of 14.11 percent and adopting Petitioner's approach on certification expenses.   Appx1307-1309; *see also* Appx1007-1018, Appx1025.   The Department justified its decision to disregard SMPC's reported market- and month-specific certification expenses by stating that SMPC's allocation method was distorted "due to timing differences between when SMPC produces and sells cylinders and when it records the certification expenses associated with those sales" and that "{t}hese timing differences create monthly fluctuations in SMPC's reported certifications expenses. . . ." Appx1025.

In its case brief, SMPC argued that the Department's methodology contradicted its practice of using the most detailed expense data

available.  *See* Appx5949-5951.  Consequently, SMPC explained, the Department calculated a "less accurate and more distorted dumping margin" than if SMPC's reported expenses were used.  Appx5950.

In the *Final Results*, the Department corrected two ministerial errors, assigning SMPC a final dumping margin of 13.89 percent. Appx1630.  However, the Department continued to use the POR-wide allocation method for certification expenses, repeating the same explanation it had used in the *Preliminary Results* and asserting that the revised allocation method was consistent with 19 C.F.R. § 351.401(g).  Appx1323.

## III.    STANDARD OF REVIEW

In reviewing a challenge to the Department's determination in an AD proceeding, the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951).  For a

determination to be supported by substantial evidence, there must be a rational connection between the facts on the record and the choice made by the Department. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962). The existence of substantial evidence is determined "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Huaiyin Foreign Trade Corp. v. United States,* 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed. Cir. 1984)). "{I}t is . . . well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence." *Allegheny Ludlum Corp. v. United States,* 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000).

A determination based on inadequate reasoning or conjecture cannot survive the "substantial evidence" standard of review. *See Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) (citing *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987)); *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d

1370, 1378 (Fed. Cir. 2013) (stating that the Department's determination cannot be made "on the basis of mere conjecture or supposition"); *Jinan Yipin Corp. v. United States*, 526 F. Supp. 2d 1347, 1375 (Ct. Int'l Trade 2007) (remanding where the Department's determination was based on "mere assumptions, which find no apparent support in record evidence").

## IV.    ARGUMENT

The Court should remand the Department's *Final Results* as unsupported by substantial evidence and contrary to law.  In using a POR-wide average in place of SMPC's reported certification expenses, which were as specific as feasible using the data kept in the ordinary course of business, the Department disregarded substantial record evidence and failed to comply with its regulations and practice.

### A.    The Department's Use of a POR-Average Allocation Method in Place of SMPC's Reported Monthly- and Market-Specific Certification Expenses Was Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law

The Department is required to adjust normal value by the amount of "any difference" between the export price and normal value due to "differences in the circumstances of sale." 19 U.S.C. § 1677b(a)(6)(C)(iii).  The Department will make circumstance-of-sale

adjustments for "direct selling expenses," which are expenses that result from and "bear a direct relationship to" a particular sale. 19 C.F.R. § 351.410(b)-(c). *See also* Uruguay Round Agreements Act, Statement of Administrative Action, H.R. 103-316, vol. 1, at 828 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4167. The Department prefers transaction-specific reporting, but uses allocated expenses when transaction-specific reporting is not available. 19 C.F.R. § 351.401(g)(1). Parties reporting on an allocated basis must demonstrate that "the allocation is calculated on as specific a basis as is feasible" using the data kept in the ordinary course of business. 19 C.F.R. § 351.401(g)(2)-(3).

SMPC derived per-unit certification expenses and reported them as direct selling expenses in Field CERTFEEH and Field CERTFEEU of the company's home market and US sales databases, respectively. Appx2352, Appx2752-2785. SMPC also fully responded to each of the Department's additional requests, and in particular reported monthly certification expenses for home-market and US sales. Appx5605-5616. SMPC reported these expenses as specifically as possible, providing extensive documentation from its books and records to support its

allocation methodology.  *Id.*; *see also* Appx3834-3842; Appx5596-5597, Appx5616-5636.

The Department has stated that "because all allocation methods are, in some sense, inexact, {it} intends to reject only those allocations methods that produce ***unreasonable*** inaccuracies or distortions." *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,346 (May 19, 1997) (emphasis added).  It is unclear why SMPC's certification expenses – reported per the Department's instructions – were so unreasonably inaccurate that an alternate allocation methodology was warranted.

The Department's approach therefore fails the substantial evidence standard, which requires the Department to consider all record evidence, and requires a rational connection between the facts on the record and the choice made by the Department.  *See, e.g., Rebar Trade Action Coalition v. United States*, 398 F. Supp. 3d 1374, 1379 (Ct. Int'l Trade 2019); *CS Wind Viet. Co. v. United States*, 832 F.3d 1367, 1376 (Fed. Cir. 2016); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The record lacks substantial evidentiary support for the Department's decision to use a

POR-wide allocation method in place of SMPC's reported certification expenses, the most detailed record information available.

The Department's approach is also contrary to law. The Department's regulations require allocation of expenses "on as specific a basis as is feasible." 19 C.F.R. § 351.401(g)(2). In determining whether an allocation is as specific as feasible, the Department must consider the respondent's books and records kept in the ordinary course of business and the normal accounting practices in the relevant country and industry. 19 C.F.R. § 351.401(g)(3). If an allocation reflects a respondent's normal books and records and the "underlying expenses are general in nature," the Department has found this to be "as specific a basis as feasible." *See, e.g., Certain Orange Juice from Brazil: Final Results of Antidumping Duty Administrative Review*, 74 Fed. Reg. 40,167 (Aug. 11, 2009), accompanying Issues and Decision Memorandum at 17; *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews*, 63 Fed. Reg. 33,320, 33,326, 33,340 (June 18, 1998) (finding one respondent to have reported

allocated rebates "as specifically as feasible, given the records {it} keeps in its normal course of business" and another's allocations to be "potentially distortive" but not "unreasonably distortive").

Although the Department can reject a respondent's allocated expenses if they are distortive, the distortion must be "substantial" or "unreasonable." *See, e.g., NSK Ltd. v. United States*, 510 F.3d 1375, 1381-83 (Fed. Cir. 2007) ("*NSK*"); *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom*, 71 Fed. Reg. 40,064 (July 14, 2006), accompanying Issues & Decision Memorandum at 67. ("*Ball Bearings 2006 AR IDM*"). In *NSK v. United States*, the Federal Circuit upheld Commerce's determination that the respondent's allocated expenses were "unreasonably distortive" because some adjustments related *entirely* to transactions outside the POR or transactions that did not involve subject merchandise. *NSK*, 510 F.3d at 1381-83. Likewise, in *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom*, the Department found that allocated expenses related to discounts, applied through a factor, "did not bear any relationship to the discounts that {the respondent} granted." *Ball Bearings 2006 AR IDM* at 67.

13

SMPC's data, by contrast, related only to expenses incurred during the POR on sales of the subject merchandise. SMPC replied fully to each of the Department's questions, using information from its normal books and records and providing data in precisely the format the Department requested. Therefore, the Department failed to comply with its regulations, which require using data that is as specific as feasible, when it chose a POR-average allocation method over SMPC's monthly and market-specific expenses.

## V.   CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above, Plaintiff respectfully requests that the Court:

1) Enter judgment in favor of Plaintiff;

2) Hold and declare that the Department's failure to use SMPC's reported certification expenses in the *Final Results* is unsupported by substantial evidence and otherwise not in accordance with law;

3) Remand this matter to the Department to issue revised final results in conformity with the Court's decision; and

4)      Grant Plaintiff such additional relief as the Court may

deem just and proper.

Respectfully submitted,

WHITE AND CASE LLP

 /s/ David E. Bond
David E. Bond
Ron Kendler
Danica Harvey
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Sahamitr Pressure
Container Plc.

Date:  August 16, 2022

## CERTIFICATE OF COMPLIANCE

I, David E. Bond, certify that the attached brief complies with the word limitation requirement, as stated in the Standard Chambers procedures. The word count for Plaintiff's Rule 56.2 Brief, as computed by the White & Case word processing system (Microsoft Word 2016), is 3,103.

<u>/s/ David E. Bond</u>
David E. Bond