**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE**

| | | |
|---|---|---|
| SAHAMITR PRESSURE CONTAINER PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WORLDWIDE DISTRIBUTION, LLP, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Court No. 22-00107 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WORTHINGTON INDUSTRIES, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S AND**
**PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:

TARA K. HOGAN
Assistant Director

SPENCER NEFF
Attorney
Office of the Chief Counsel
For Trade Enforcement & Compliance
U.S. Department of Commerce

ALISON S. VICKS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
alison.s.vicks@usdoj.gov

November 14, 2022

## TABLE OF CONTENTS

Page

STATEMENT PURSUANT TO RULE 56.2 ...............................................2

    I.   Administrative Determination Under Review .......................2

    II.   Issue Presented For Review ..................................................2

STATEMENT OF FACTS .........................................................................3

SUMMARY OF THE ARGUMENT ...........................................................5

ARGUMENT ............................................................................................7

    I.   Standard Of Review .............................................................7

    II.   Commerce's Rejection of SMPC's Reported Monthly
        Certification Expense Allocation Methodology And Use
        Of A Period Of Review Average Allocation Method Is
        Supported By Substantial Evidence And In Accordance With
        Law ......................................................................................9

        A.   Legal Framework ..........................................................9

        B.   Commerce's Rejection Of SMPC's Allocation
              Methodology Should Be Sustained Because It Is
              Based On Substantial Record Evidence ......................11

        C.   Commerce's Rejection Of SMPC's Allocation
              Methodology Is In Accordance With Law Because
              SMPC Failed To Demonstrate To Commerce's
              Satisfaction That Its Methodology Was Not
              Distortive ......................................................................14

CONCLUSION ......................................................................................20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Atl. Sugar, Ltd. v. United States,*
    744 F.2d 1556 (Fed. Cir. 1984) ............................................................ 7

*Boomerang Tube LLC v. United States,*
    856 F.3d 908 (Fed. Cir. 2017) .............................................................. 12

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ............................................................................. 7

*Fujitsu General Ltd. v. United States,*
    88 F.3d 1034 (Fed. Cir. 1996) .............................................................. 20

*INS v. Elias-Zacarias,*
    502 U.S. 478 (1992) ............................................................................. 8

*Mid Continent Steel & Wire, Inc. v. United States,*
    203 F. Supp. 3d 1295 (Ct. Int'l Trade 2017) ........................................ 8

*NSK Ltd. v. United States,*
    510 F.3d 1375 (Fed. Cir. 2007) ................................................... passim

*Nucor Corp. v. United States,*
    612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ....................................... 8

*Thai Pineapple Pub. Co. v. United States,*
    187 F.3d 1362 (Fed. Cir. 1999) ........................................................... 19

*United States Steel Corp. v. United States,*
    348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018) ....................................... 8

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ..................................................... 7

19 U.S.C. § 1677(35)(A) ............................................................ 9

19 U.S.C. § 1677a(a) ................................................................. 9

19 U.S.C. § 1677a(c)(2)(A) ..................................................... 10

19 U.S.C. § 1677a(c)-(d) ........................................................... 9

19 U.S.C. § 1677b(a) ................................................................. 9

19 U.S.C. § 1677b(a)(1)(A)-(B) ................................................. 9

19 U.S.C. § 1677b(a)(6)(C)(iii) .................................................. 9

28 U.S.C. § 2637(d) ................................................................. 12

## REGULATIONS

19 C.F.R. § 351.401(b)(1) ......................................................... 19

19 C.F.R. § 351.401(g)(1) ................................................... passim

19 C.F.R. § 351.401(g)(2) ................................................... passim

19 C.F.R. § 351.410(b)-(c) ........................................................ 10

## OTHER AUTHORITIES

*Antidumping Duties; Countervailing Duties,*
   62 Fed. Reg. 27,296, 27,346 (May 19, 1997) ........................................ 17

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
   85 Fed. Reg. 63,081, 63,085 (Dep't of Commerce Oct. 6, 2020) ............ 3

*Steel Propane Cylinders from Thailand,*
   86 Fed. Reg. 49,295 (Dep't of Commerce Sep. 2, 2021)...................... 4, 5

*Steel Propane Cylinders from Thailand,*
   87 Fed. Reg. 12,659 (Dep't of Commerce Mar. 7, 2022)........................ 2

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| SAHAMITR PRESSURE CONTAINER PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WORLDWIDE DISTRIBUTION, LLP, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Court No. 22-00107 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WORTHINGTON INDUSTRIES, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## ORDER

Upon consideration of plaintiff's and plaintiff-intervenor's motion for judgment upon the agency record, responses thereto, replies, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's and plaintiff-intervenor's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained in its entirety.

Dated: _____, 2022                    _____
       New York, New York                                Judge

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| SAHAMITR PRESSURE CONTAINER PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WORLDWIDE DISTRIBUTION, LLP, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | Court No. 22-00107 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WORTHINGTON INDUSTRIES, | ) | |
| | ) | |
| Defendant-Intervenor | ) | |

_____)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS

Pursuant to Rule 56.2 of this Court's rules, defendant, the United States, respectfully submits this response to the motions for judgment upon the agency record filed by plaintiff, Sahamitr Pressure Container

PLC (SMPC), and by plaintiff-intervenor, Worldwide Distribution LLP (Worldwide).  ECF No. 29 (SMPC Br.); ECF No. 30 (Worldwide Br.). Plaintiff and plaintiff-intervenor challenge certain aspects of the Department of Commerce's determination of the final results of review of the antidumping duty order covering steel propane cylinders from Thailand.  As demonstrated below, the Court should sustain Commerce's final results because they are based on substantial evidence on the record and otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

### I.   Administrative Determination Under Review

The administrative determination under review is *Steel Propane Cylinders from Thailand*, 87 Fed. Reg. 12,659 (Dep't of Commerce Mar. 7, 2022) (final results), and the accompanying Issues and Decision Memorandum (IDM).  The period of review is December 27, 2018, through July 31, 2020.

### II.   Issue Presented For Review

Whether Commerce's rejection of SMPC's allocation methodology for reporting its certification fees is supported by substantial evidence on the record and in accordance with law.

## STATEMENT OF FACTS

On October 6, 2020, Commerce initiated a review of its antidumping duty order covering steel propane cylinders from Thailand, selecting SMPC as the sole mandatory respondent. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 63,081, 63,085 (Dep't of Commerce Oct. 6, 2020). As part of its initial questionnaire to respondent, Commerce requested that SMPC report any direct selling expenses incurred on U.S. sales, instructing SMPC to report expenses on an allocated basis "only when {such} expenses cannot be tied to a specific sale." *See* Appx6027. Commerce's instructions further noted that Commerce would accept allocated expenses under certain circumstances, including that SMPC demonstrate that the allocation "is not unreasonably distortive." *Id.*

In its response, SMPC reported that it incurred certification expenses on sales of steel propane cylinders to U.S. customers. Appx2352; Appx2752-85. SMPC reported allocated certification expenses using a ratio that it applied to U.S. gross unit sales prices to calculate a per-unit certification expense. Appx2352. Commerce responded with additional questions, asking SMPC why it was unable

3

to report these expenses on a more specific basis and to show how the methodology employed by SMPC did not cause distortions.  Appx3450.

In its supplemental response, SMPC explained that it was unable to attribute certification-related expenses to their corresponding sales because SMPC pays certification fees to outside vendors after it completes its production and sales of the merchandise.  Appx3653-54. Commerce then asked SMPC to calculate a monthly per-unit certification expense for its U.S. sales.  Appx5587.  SMPC did so by presenting a calculation of its "percentage of CERTFEEU," showing widely divergent monthly fees from 0.0% to 4.168% for the U.S. market. Appx5607.  In its narrative response, SMPC again explained that it "is not able to relate certification fees incurred directly to individual sales invoices" because it pays certification and inspection fees "after the production and sale of cylinders."  Appx5596-97.  SMPC then stated that it derived its calculation by dividing its reported monthly certification expenses by the corresponding monthly sales value. Appx5597.

Commerce published its preliminary results on September 2, 2021. *Steel Propane Cylinders from Thailand*, 86 Fed. Reg. 49,295

(Dep't of Commerce Sep. 2, 2021) (preliminary results).  Commerce preliminarily found that the method by which SMPC reported its monthly certification expenses was distortive due to timing differences between when SMPC produces and sells cylinders and when it records the certification expenses associated with those sales.  Appx1025. These timing differences created monthly fluctuations in SMPC's reported certification expenses.  *Id.*  For example, Commerce cited one instance in which two months of certification expenses were allocated to a single month of sales, whereas no fee expenses were allocated to certain months.  *Id.*  Commerce therefore calculated, and relied upon, a certification expense ratio for the entire period of review rather than relying on SMPC's.  *Id.*

In its final results, Commerce continued to find that its methodology of averaging certification expenses across the entire period of review was appropriate, and that the monthly expense ratio reported by SMPC was distortive and inappropriate for use.  Appx1323-24.  This suit followed.

## SUMMARY OF THE ARGUMENT

Commerce's final results are supported by substantial evidence on

the record, in accordance with law, and should be sustained.  When transaction-specific reporting is not feasible, Commerce may, but is not required to, consider allocated expenses and price adjustments where the allocation does not cause distortion or inaccuracies.  19 C.F.R. § 351.401(g)(1).  When parties seek to report expenses on an allocated basis, they must demonstrate to Commerce that their methodology does not cause inaccuracies or distortions.  19 C.F.R. § 351.401(g)(2).

SMPC did not establish that the methodology it used did not cause inaccuracies or distortions, and Commerce therefore rejected the certification expense allocation methodology reported by SMPC. Commerce found, based on record evidence, that SMPC's allocation methodology created monthly fluctuations in reported expenses and determined that SMPC's resulting reporting was distortive.  In so doing, Commerce articulated its explanation, pointing to record evidence to support its determination.  SMPC failed to rebut Commerce's finding or otherwise establish that its reported methodology was not distortive, and, therefore, failed to meet its burden under 19 C.F.R. § 351.401(g)(2).

Although SMPC and Worldwide argue that Commerce is required

6

to employ the most specific feasible allocation methodology, both parties

disregard that it is SMPC's burden to establish, to Commerce's

satisfaction, that its reported allocation methodology is not distortive

for Commerce to accept it.  Here, Commerce acted in accordance with

law by rejecting the allocation methodology reported by SMPC and

employing its own, non-distortive methodology.

## ARGUMENT

I.   **Standard Of Review**

The Court upholds Commerce's determination if it is supported by

"substantial evidence on the record" and otherwise "in accordance with

law."  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is "more than

a mere scintilla" of relevant and reasonable evidence to support the

underlying conclusions.  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938).  The requisite proof amounts to "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion" in

light of "the entire record, including whatever fairly detracts from the

substantiality of the evidence."  *Atl. Sugar, Ltd. v. United States*, 744

F.2d 1556, 1562 (Fed. Cir. 1984) (footnote and internal quotation marks

omitted).  When Congress has entrusted an agency to administer a

statute that demands inherently fact intensive inquiries, such as in this case, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

To comply with the statutory requirement that Commerce's determinations be made "in accordance with law," Commerce must "follow its established practice or explain why it is reasonable for it to deviate from its practice."  *United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018).  Commerce's actions establish a practice "'when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to' the agency's past action."  *Id.* at 1254 (quoting *Mid Continent Steel & Wire, Inc. v. United States*, 203 F. Supp. 3d 1295, 1312 (Ct. Int'l Trade 2017)).

II.   **Commerce's Rejection of SMPC's Reported Monthly Certification Expense Allocation Methodology And Use Of A Period Of Review Average Allocation Method Is Supported By Substantial Evidence And In Accordance With Law**

A.   **Legal Framework**

To determine whether subject merchandise is being sold in the United States at less than fair value, Commerce compares the price at which the merchandise is sold in the United States (the export price) with the price of the product in the home market (the normal value). *See* 19 U.S.C. § 1677b(a); 19 U.S.C. § 1677a(a); 19 U.S.C. § 1677b(a)(1)(A)-(B).  The dumping margin is the amount by which the normal value exceeds the export price.  *See* 19 U.S.C. § 1677(35)(A).

To ensure a fair comparison between home market and U.S. sales, Commerce adjusts the price used to determine export price and normal value under certain conditions.  19 U.S.C. § 1677a(c)-(d) (export price); *id.* at § 1677b(a)(6)-(7) (normal value).  Commerce is required to adjust normal value by the amount of "any difference" between the export price and the normal value "that is established to the satisfaction of the administering authority" to be due to "differences in the circumstances of sale" in the two markets.  19 U.S.C. § 1677b(a)(6)(C)(iii).  One such

"circumstances of sale adjustment" is for "direct selling expenses,"
which are expenses that bear a direct relationship to the particular sale
in question, such as the certification fees in this case.  19 C.F.R.
§ 351.410(b)-(c).

Pursuant to 19 U.S.C. § 1677a(c)(2)(A), Commerce may adjust
export prices by deducting expenses.  In determining the amount of the
deduction, "when transaction specific reporting is not feasible,"
Commerce may consider allocated expenses, "provided {Commerce} is
satisfied that the allocation method used does not cause inaccuracies or
distortions."  19 C.F.R. § 351.401(g)(1); *NSK Ltd. v. United States*, 510
F.3d 1375, 1382 (Fed. Cir. 2007) (Commerce is "not required to accept
billing adjustments on an allocated basis" but "may" do so under the
regulations).  Pursuant to 19 C.F.R. § 351.401(g)(2), any party seeking
to report an expense adjustment on an allocated basis must
demonstrate that the allocation is calculated on as specific a basis as
feasible and must explain why the allocation methodology used does not
cause inaccuracies or distortions.  "Regardless of whether a more
specific reporting basis is feasible," Commerce may reject an allocation
methodology when the party fails to demonstrate that its methodology

10

does not cause inaccuracies or distortions. *NSK Ltd.*, 510 F.3d at 1382.

Therefore, the party seeking the adjustment bears the burden of

establishing that an allocation methodology does not cause inaccuracies

or distortions. *Id.*; 19 C.F.R. § 351.401(g)(2).

### B.  Commerce's Rejection Of SMPC's Allocation Methodology Should Be Sustained Because It Is Based On Substantial Record Evidence

Commerce's determination that SMPC's allocation methodology

was unreasonably distortive, and therefore inappropriate for use, is

supported by substantial record evidence and should be sustained.

SMPC contends that Commerce failed to establish a rational connection

between the facts and the choice it made, and therefore fails to meet the

substantial evidence standard.  Pl. Br. at 11.  SMPC is incorrect:

Commerce rejected SMPC's monthly certification expense allocation

methodology based on record evidence showing that SMPC's

methodology caused inaccuracies or distortions.  Appx1323.

Commerce's rejection is supported by substantial evidence on the record

and establishes a rational connection between the facts and Commerce's

choice.  Moreover, Commerce's choice of calculation methodology is

entitled to deference.

In its preliminary results, after requesting and analyzing information from SMPC and considering comments from interested parties, Commerce made changes to SMPC's reported certification fees (CERTFEEH/E) on its home and U.S. sales.[1]  Appx1025.  Specifically, Commerce found that SMPC's monthly allocation method distorted the CERTFEEH and CERTFEEU fields due to the timing difference between when SMPC produces and sells cylinders and when it reports the certification expenses for those cylinders.  Appx1025.  These timing differences caused monthly fluctuations in SMPC's reported certification expenses.  *Id.*

In support of its finding, Commerce cited to the record evidence that SMPC's calculation method allocated two months of expenses to a

---

[1] In their briefs before this Court, both SMPC and Worldwide observe that Commerce accepted SMPC's allocation methodology in the original investigation, but neither argue that Commerce is required to justify this change from its prior practice.  Pl. Br. at 4; Worldwide Br. at 4.  The issue was also not developed before Commerce in the parties' case briefs.  Thus, any argument before this Court that Commerce must justify the change to SMPC's certification fees from the original investigation is waived.  28 U.S.C. § 2637(d); *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) ("{T}his statutory mandate indicates a congressional intent that, absent a strong contrary reason, the {CIT} should insist that parties exhaust their remedies before the pertinent administrative agencies.") (citation omitted) (internal quotation marks omitted).

single month and no expenses to other months. *Id*. In its final results, Commerce continued to find that SMPC's allocation methodology caused distortions and was, therefore, unacceptable for allocating expenses. Appx1323. In the final results, Commerce articulated its explanation for why it continued to reject SMPC's allocation methodology as distortive, pointing to examples in the record to support its determination. *Id.* In short, based on the record evidence, Commerce was not satisfied that SMPC's reporting method did not cause inaccuracies or distortions in accordance with 19 C.F.R. §§ 351.401(g)(1)-(2), and therefore rejected SMPC's reporting method.

In challenging that substantial evidence supports Commerce's determination, SMPC contends that: (1) it "fully responded" to each of Commerce's requests, including to calculate per-unit and monthly expenses, and (2) it reported its expenses "as specifically as possible," with support from its books and records. Pl. Br. at 10. SMPC's claim that it responded to all of Commerce's requests is inaccurate: at no point did SMPC respond to Commerce's request to explain how its reported certification allocation expenses did *not* cause inaccuracies or distortions.

Moreover, simply because SMPC responded to Commerce's requests and contends that it reported its expenses "as specifically as possible" does not mean that Commerce must accept SMPC's allocation methodology. Indeed, this is a misreading of the law, which requires SMPC to demonstrate to Commerce's satisfaction that its allocation methodology does not cause distortions. *See* 19 C.F.R. § 351.401(g)(2). In fact, Commerce may *only* accept an allocation methodology when it is satisfied that such a methodology does *not* cause distortions. 19 C.F.R. § 351.401(g)(1). As explained above, SMPC's responses showing how it calculated its monthly certification fee ratio failed to demonstrate to Commerce that its allocation methodology did not cause inaccuracies or distortions. SMPC therefore failed to meet its burden pursuant to 19 C.F.R. § 351.401(g)(2). Accordingly, Commerce, based on record evidence, rejected SMPC's allocation methodology, explaining its decision. Appx1323. The final results are supported by substantial evidence on the record and should be sustained.

### C.     Commerce's Rejection Of SMPC's Allocation Methodology Is In Accordance With Law Because SMPC Failed To Demonstrate To Commerce's Satisfaction That Its Methodology Was Not Distortive

Commerce's rejection of SMPC's allocation methodology, and use

14

of its own allocation methodology, is in accordance with law and is supported by precedent. SMPC contends that Commerce's final determination is contrary to law, claiming that Commerce's regulations require allocation of expenses "on as specific a basis as possible." Pl. Br. at 12-13; Worldwide Br. at 4-5. SMPC is incorrect and misreads the regulations and the case law.

As an initial matter, Commerce is not *required* to accept allocation of expenses at all. *NSK Ltd.*, 510 F.3d at 1382 ("Commerce is not required to accept billing adjustments on an allocated basis.") (citing 19 C.F.R. § 351.401(g)(1)) ("The Secretary *may* consider allocated . . . price adjustments when transaction-specific reporting is not feasible.")). Moreover, SMPC's focus on the "as specific a basis as possible" aspect of the regulation ignores that the regulation also establishes that it is *SMPC's* burden to show that its reporting is not distortive. The relevant regulation, 19 C.F.R. § 351.401(g)(2), provides that:

> Any party seeking to report an expense . . . on an allocated basis must demonstrate to the Secretary's satisfaction that the allocation is calculated on as specific a basis as is feasible, and must explain why the allocation methodology used does not cause distortions.

Thus, even assuming SMPC's reporting is the most specific feasible

allocation, Commerce found it to be distortive and therefore inappropriate for use.  Appx1323.  When a party fails to demonstrate that its allocation methodology does not cause inaccuracies or distortions, "Commerce {is} within its rights to reject {the} billing adjustment allocation."  *NSK Ltd.*, 510 F.3d at 1382 (discussing that the availability of a "more specific" adjustment was "irrelevant" in light of "the simple fact {} that Koyo failed to demonstrate that its allocation methodology does not cause inaccuracies or distortion.").  Thus, Commerce lawfully rejected SMPC's allocation methodology, regardless of whether SMPC provided a specific monthly adjustment, because SMPC failed to demonstrate that its allocation methodology did not cause inaccuracies or distortions.  *Id.*

And because the availability of a "more specific" allocation methodology is "irrelevant" if the party failed to demonstrate that its methodology does not cause inaccuracies or distortions, *NSK Ltd.*, 510 F.3d at 1382, SMPC's citations to a number of cases discussing what Commerce has found to be "as specific a basis as feasible" are inapposite and irrelevant.  *See* Pl. Br. at 12-13.  Commerce did not reject SMPC's methodology because it did not meet the standard of "as specific a basis

16

as feasible," but because SMPC failed to meet its burden demonstrate that its method did not cause inaccuracies or distortions. *See* Appx1323. This reason alone, if supported by substantial evidence, as it is here, is sufficient to sustain Commerce's decision. *NSK Ltd.*, 510 F.3d at 1382.

SMPC complains that Commerce's decision does not make clear why SMPC's allocation method is "so unreasonably inaccurate that an alternative allocation methodology is warranted{,}" appearing to contend that Commerce needed to find that SMPC's allocation method was "unreasonably" distortive to reject it. *See* Pl. Br.at 11. As an initial matter, in addition to inappropriately shifting the burden, SMPC's position fails to recognize that it is not entitled to allocated expenses at all. *NSK Ltd.*, 510 F.3d at 1383 ("{T}he use of a non-transaction-specific allocation methodology is not a right.") (additional citations omitted). In any event, in the *Preamble* that SMPC cites, Commerce revised 19 C.F.R. § 351.401(g)(1) to its current language that the Secretary may consider allocated expenses if the Secretary is satisfied that the allocation method used "does not cause inaccuracies or distortions." *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,346

17

(May 19, 1997) (*Preamble*).).  The *Preamble* then provides the

explanatory note referenced by SMPC that all allocation methods are

inexact, so the Secretary only intends to reject allocation methods that

are "unreasonably distortive," the same language Commerce used in the

instructions to SMPC regarding reporting allocated expenses.  *See*

Appx6027.  Here, Commerce rejected SMPC's allocation methodology as

causing inaccuracies or distortions, showing that Commerce was not

"satisfied" based on record evidence that the allocation method was not

unreasonably distortive.  No more is needed on the part of Commerce

under the regulations or the case law.  *See NSK Ltd.*, 510 F.3d at 1382.

Although *NSK* supports Commerce in this case, SMPC relies on

*NSK* as support for its position that Commerce can only reject

"substantial" or "unreasonable" distortions.  Pl. Br. at 13.  SMPC is

correct that the Court of Appeals in *NSK* upheld Commerce's rejection

of the respondent's reporting methodology as "unreasonably distortive,"

which was language the Commerce itself had used to describe the

distortion.  But the Court of Appeals in *NSK* did not hold that the

distortion must be deemed to particularly "substantial" or

"unreasonable"—or that Commerce must use either of those words—for

Commerce to be justified in rejecting it.  And, as explained above, *NSK* actually supports Commerce's determination here because the respondent there, like here, failed to demonstrate that its allocation methodology was not distortive, leading the Court to sustain Commerce's decision to reject it.  *NSK Ltd.*, 510 F.3d at 1382.

Indeed, because SMPC failed to report a non-distortive allocation methodology, Commerce could have determined that SMPC failed to establish a basis on which to grant the allocation.  *See NSK Ltd.*, 510 F.3d at 1383 ("{T}he use of a non-transaction-specific allocation methodology is not a right.") (citing 19 C.F.R. § 351.401(b)(1)).  Instead of fully rejecting an allocated deduction, Commerce merely altered the methodology to reflect a non-distortive allocation.  Appx1323-24. Commerce was satisfied that this allocation methodology was non-distortive pursuant to 19 C.F.R. § 351.401(g)(1).  Commerce's methodology, like SMPC's, relied only on expenses incurred during the period of review on sales of subject merchandise, but Commerce merely adjusted the calculation to reflect a weighted average over the entire period of review.  Appx1025.

Commerce's choice of methodology, moreover, is considered

"presumptively correct" and must be afforded deference. *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) ("We have held that Commerce is the "master of antidumping law," and reviewing courts must accord deference to the agency in its selection and development of proper methodologies."). SMPC has provided no reason, other than its own preference, for this Court to reject Commerce's choice of allocation methodology. But this is exactly the type of determination—one that turns on "complex economic and accounting inquiries"—that this Court must afford deference to Commerce. *Fujitsu General Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996). Commerce's rejection of SMPC's reported allocation methodology and its choice to use its own, non-distortive allocation methodology is therefore in accordance with the law.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's final results of review in its entirety and deny plaintiff's and consolidated plaintiff's motions for judgment on the agency record.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:                                    /s/ Alison S. Vicks
                                               ALISON S. VICKS
SPENCER NEFF                                   Trial Attorney
Attorney                                       Commercial Litigation Branch
Office of the Chief Counsel                    Civil Division
For Trade Enforcement & Compliance U.S. Department of Justice
U.S. Department of Commerce                    P.O. Box 480
                                               Ben Franklin Station
                                               Washington, D.C. 20044
                                               alison.s.vicks@usdoj.gov

November 14, 2022

21

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 3,506 words.

<u>s/ Alison S. Vicks</u>

November 14, 2022