**NONCONFIDENTIAL**

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| SAHAMITR PRESSURE CONTAINER PLC., <br><br>        Plaintiff, <br><br>  and <br><br>WORLDWIDE DISTRIBUTION, LLP, <br><br>        Plaintiff-Intervenor, <br><br>  v. <br><br>UNITED STATES, <br><br>        Defendant, <br><br>  and <br><br>Worthington Industries, <br><br>        Defendant-Intervenor. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Court No. 22-00107 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS**

PAUL C. ROSENTHAL
R. ALAN LUBERDA
DAVID C. SMITH, JR.
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
Counsel to Worthington Industries

December 14, 2022

## Table of Contents

Page

DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS ................................................................. 1

I.   RULE 56.2 STATEMENT ............................................................. 1

    A.   Administrative Determination Under Review ....................... 1

    B.   Issue Presented ...................................................................... 2

STATEMENT OF FACTS ...................................................................... 2

SUMMARY OF THE ARGUMENT ...................................................... 7

ARGUMENT .......................................................................................... 8

I.   STANDARD OF REVIEW ........................................................... 8

II.  SUBSTANTIAL EVIDENCE SUPPORTS THE DEPARTMENT'S FINDING THAT SMPC'S PROPOSED CERTIFICATION EXPENSE ALLOCATION IS DISTORTIVE ...................................... 11

    A.   SMPC Failed to Demonstrate That Its Chosen Allocation Methodology Was Not Distortive ....................... 11

    B.   Substantial Record Evidence Supports the Department's Determination That SMPC's Allocation Methodology Is Distortive ................................... 13

III. *NSK LTD.* DOES NOT SUPPORT THE PLAINTIFF'S CLAIM ...................................................................................... 17

CONCLUSION ..................................................................................... 20

i

NONCONFIDENTIAL

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Matsushita Elec. Indus. Co. v. United States*,
    750 F.2d 927 (Fed. Cir. 1984) ........................................................ 9, 10

*Mitsubishi Heavy Indus., Ltd, v. United States*,
    275 F.3d 1056, 1062 (Fed. Cir. 2001) ............................................9-10

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2002) ........................................................ 10

*NSK Ltd. v. United States,*
    510 F.3d 1375 (Fed. Cir. 2007) ................................................8, 17-19

*United States Steel Group v. United States*,
    96 F.3d 1352 (Fed. Cir. 1996) .......................................................... 10

## Statutes and Regulations

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................................8-9

19 U.S.C. § 1677b(a)(6)(C)(iii) .................................................................. 3

28 U.S.C. § 1581(c) ..................................................................................... 8

19 C.F.R. § 351.410(c)................................................................................ 3

19 C.F.R. § 351.410(g) .............................................................................. 16

19 C.F.R. § 351.410(g)(1).......................................................................... 11

19 C.F.R. § 351.410(g)(2).................................................................... 11, 12

NONCONFIDENTIAL

## Administrative Determinations

*Issues and Decision Memorandum for the Final Results of*
   *the Antidumping Duty Administrative Review of Steel*
   *Propane Cylinders from Thailand; 2018-2020*
   (Dep't Commerce Mar. 1, 2022) ("*IDM*"). .................................. *passim*

*Steel Propane Cylinders from Thailand:*
   *Final Results of Antidumping Duty Administrative*
   *Review; 2018-2020*, 87 Fed. Reg. 12,659
   (Dep't Commerce Mar. 7, 2022) ("*Final Results*").................... *passim*

*Steel Propane Cylinders from Thailand:*
   *Preliminary Results of Antidumping Duty Administrative*
   *Review; 2018-2020*, 86 Fed. Reg. 49,295
   (Dep't Commerce Sept. 2, 2021) ............................................... 6, 7, 14

NONCONFIDENTIAL

## DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS

Pursuant to Rule 56.2 of this Court's rules, defendant-intervenor, Worthington Industries ("Worthington"), respectfully submits this response to the motions for judgment upon the agency record filed by plaintiff, Sahamitr Pressure Container PLC ("SMPC"), and by plaintiff-intervenor, Worldwide Distribution LLP ("Worldwide"). ECF No. 29 (SMPC Br.); ECF No. 30 (Worldwide Br.). Plaintiff and plaintiff-intervenor challenge a single issue in the U.S. Department of Commerce's (the "Department") final results of the first administrative review of the antidumping duty order covering steel propane cylinders from Thailand. As demonstrated below, the Court should sustain the Department's final results because they are based on substantial evidence on the record and otherwise in accordance with law.

## I.   RULE 56.2 STATEMENT

### A.   Administrative Determination Under Review

The administrative determination under review is *Steel Propane Cylinders from Thailand: Final Results of Antidumping Duty Administrative Review; 2018-2020*, 87 Fed. Reg. 12,659 (Dep't

NONCONFIDENTIAL

Commerce Mar. 7, 2022) (Appx1630) ("*Final Results*"), and the accompanying *Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Steel Propane Cylinders from Thailand; 2018-2020* (Dep't Commerce Mar. 1, 2022) (Appx1317) ("*IDM*"). The period of review ("POR") is December 27, 2018, through July 31, 2020 (Appx1630).

### B.   Issue Presented

Whether the Department's decision to reject SMPC's distortive certification fee allocation methodology is supported by substantial evidence and in accordance with law.

Answer:  Yes. The Department's *Final Results* are supported by substantial evidence because SMPC was unable to demonstrate its allocation methodology was not distortive, and the record evidence cited by the Department demonstrates that it is distortive.

## STATEMENT OF FACTS

On October 6, 2020, the Department initiated a review of its antidumping duty order covering steel propane cylinders from Thailand and selected SMPC as the sole mandatory respondent. Appx6295,

NONCONFIDENTIAL

Appx6299. On November 3, 2020, the Department issued the initial questionnaire ("Initial Questionnaire") to SMPC. Appx6013.

SMPC manufactures steel propane cylinders, the merchandise under review, pursuant to various standards, including Thai standard TIS 27-2543 in the home market and U.S. Department of Transportation ("USDOT") standards 4BA and 4BW in the United States. *See* Appx1662. SMPC pays "outside vendors" to inspect the cylinders SMPC sells and to certify that the cylinders satisfy the relevant standards. Appx3654; Appx5596-5597. SMPC reported such expenses as direct selling expenses in both the home market and U.S. sales listings. *See* Appx2365 (variable CERTFEEH); Appx2352, Appx2672 (variable CERTFEEU).

Commerce treats home market and U.S. certification fees as a circumstances-of-sale adjustment to normal value under 19 U.S.C. § 1677b(a)(6)(C)(iii); specifically, in calculating normal value, Commerce deducts home market certification fees from home market price and then adds U.S. certification fees. *See* Appx1017; *see also* 19 U.S.C. § 1677b(a)(6)(C)(iii); 19 C.F.R. § 351.410(c).

NONCONFIDENTIAL

In its Initial Questionnaire, the Department requested that SMPC report direct selling expenses incurred on U.S. sales on the most transaction-specific basis possible, and specified that respondents like SMPC may report direct expenses on an allocated basis "only when {such} expenses cannot be tied to a specific sale." *See* Appx6027 ("Report price adjustments and expenses on an allocated basis (*e.g.*, on an average basis) only when price adjustments and expenses cannot be tied to a specific sale"). The Department's instructions indicated that it would accept allocated expenses only if SMPC demonstrated that the allocated expenses are "not unreasonably distortive," and contingent upon SPMC providing a complete explanation of "why your allocation methodology does not cause inaccuracies or distortions." *Id.*

In its response, SMPC reported that it incurred certification expenses on sales of steel propane cylinders to U.S. customers. Appx2352; Appx2752-2785. SMPC reported allocated certification expenses using a ratio that it applied to U.S. gross unit sales prices to calculate a per-unit certification expense; SMPC did not explain why it was unable to provide transaction-specific expenses. *See* Appx2352.

NONCONFIDENTIAL

Additionally, SMPC did not explain why its chosen allocation method was not distortive. *See id.*

The Department again requested that SMPC explain why it "cannot report the {certification} price adjustment or expense on a more specific basis" and "why your allocation methodology does not cause inaccuracies or distortions." Appx3450. In its supplemental response, SMPC responded that it:

> pays its certification fees to outside vendors after SMPC's production and sale of the merchandise under review, the company cannot attribute individual certification-related expenses to individual sales invoices. The expense-allocation provided is the most accurate basis on which SMPC is able to report POR certification expenses using the books and records the company maintains in the normal course of business.

Appx3653-3654. In its response, SMPC failed to respond to the Department's request that it explain why its allocation method did not cause distortions.

The Department subsequently asked SMPC to calculate a market- and month-specific per-unit certification expense for its U.S. and home market sales. Appx5587. SMPC provided a calculation of the

certification expenses that it allocated to each month of the POR, which showed widely divergent monthly allocations from [                    ] for the U.S. market and [                ] for the home market. Appx5607. SMPC noted that that it allocated the expenses by dividing its reported monthly certification expenses by the corresponding monthly sales value, but again failed to explain the fluctuations in monthly expenses and why its chosen allocation methodology was not distortive. Appx5597.

In the *Preliminary Results*, Appx1000, the Department found that SMPC's monthly certification allocation methodology was distortive because of timing differences between the time when SMPC produces and sells cylinders and when SMPC records the certification expenses associated with those sales. Appx1025. For example, the Department cited instances in which two months of certification expenses were allocated to a single month of sales, and others where no expenses were allocated in certain months. *Id.* Commerce therefore re-calculated, and relied upon, a market-specific certification expense ratio for the entire period of review that allocated the same percentage of expenses to each

month of the review period, rather than relying on SMPC's allocation.
*Id.*

SPMC filed an affirmative administrative case brief and again did
not address why its allocation methodology was not distortive.
Appx5939, Appx5949-5953.

In the *Final Results*, the Department continued to find that SMPC's
monthly allocation methodology was distortive. Appx1323-1324. The
Department again cited to the timing differences between when SMPC
produces and sells its cylinders and when it records the certification
expenses associated with those sales. *Id.* For the *Final Results*, the
Department again relied on the POR-wide average allocation method
that it had relied on in the *Preliminary Results*. Appx1324.

## SUMMARY OF THE ARGUMENT

The Department's determination that SMPC's certification allocation
methodology is distortive is supported by substantial evidence and in
accordance with law. If a respondent cannot provide transaction-specific
expense reporting, the Department may consider allocated expenses.
The Department's regulations require that a respondent demonstrate
that its chosen allocation methodology is not distortive. SMPC did not

demonstrate that its allocation methodology was not distortive at any point in the review.

Further, substantial evidence supports the Department's finding that SMPC's allocation methodology was distortive. The Department demonstrated, for example, that SMPC allocated multiple months of certification expenses to a single month and no certification expenses to other months. The record supports this finding. SMPC's methodology over-allocates certification expenses to some months while allocating no certification expenses to other months.

Finally, SMPC cites *NSK Ltd. v. United States* as support for its claim that the Department's determination is not in accordance with law. Contrary to SMPC's claim, *NSK Ltd. v. United States* supports the Department's rejection of SMPC's certification allocation methodology because its methodology was similarly distortive and because SMPC failed to demonstrate that its methodology was not distortive.

## ARGUMENT

### I.     Standard of Review

Plaintiff seeks review of the administrative determination at issue pursuant to 28 U.S.C. § 1581(c). In reviewing a challenge to a final

determination by the Department, this Court will hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1933); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)).

A plaintiff, however, must do more than simply point to contradictory evidence in the record to overturn the agency's decision. "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Matsushita*, 750 F.2d at 933 (citations omitted). To the extent, therefore, that the evidence before Commerce "could be open to multiple interpretations, its argument does not require, or even allow, reversal." *Mitsubishi Heavy Indus., Ltd, v.*

*United States*, 275 F.3d 1056, 1062 (Fed. Cir. 2001) (citing *Matsushita*, 750 F.2d at 933).

In addition, a plaintiff may not ask the Court to re-weigh the evidence and assume the role of the Department. *See Matsushita*, 750 F.2d at 933. The role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Group v. United States*, 96 F.3d 1352,1356-57 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence but whether it reasonably supports a rational decision that is evaluated by a reviewing court). "Under the substantial evidence standard, when adequate evidence exists on both sides of an issue, assigning evidentiary weight falls exclusively within the authority of {the agency}." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1358 (Fed. Cir. 2002). The Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See* Matsushita, 750 F.2d at 936.

## II.    Substantial Evidence Supports the Department's Finding That SMPC's Proposed Certification Expense Allocation Is Distortive

The Department's regulations require a respondent to demonstrate that its chosen allocation methodology is not distortive. *See* 19 C.F.R. § 351.401(g)(2). SMPC failed to demonstrate that its allocation methodology is not distortive, a burden that lies squarely with SMPC. Further, the Department's determination that SMPC's allocation methodology is distortive is supported by substantial evidence on the record and should be sustained. Accordingly, the Court should sustain the Department's *Final Results*.

### A.    SMPC Failed to Demonstrate That Its Chosen Allocation Methodology Was Not Distortive

The Department is not required to accept allocated expenses. 19 C.F.R. § 351.401(g)(1) ("The Secretary *may* consider allocated expenses and price adjustments when transaction-specific reporting is not feasible, *provided the Secretary is satisfied that the allocation method used does not cause inaccuracies or distortions*") (emphasis added). SMPC was required to demonstrate to the Department's satisfaction that the allocation methodology did not cause inaccuracies or

NONCONFIDENTIAL

distortions. *See* 19 C.F.R. § 351.401(g)(2) ("Any party seeking to report an expense or a price adjustment on an allocated basis must demonstrate to the Secretary's satisfaction . . . why the allocation methodology used does not cause inaccuracies or distortions.").

Despite this requirement, SMPC failed to explain to the Department why its methodology did not cause distortions. In its initial Section C Questionnaire Response, when explaining its certification allocation, SMPC only stated:

> SMPC during the POR incurred certification fees related to sales of the subject merchandise to certain US customers. We provide in Exhibit C-9 a worksheet to demonstrate how SMPC derived the certification-fee ratio applied to its customers' gross unit prices to calculate the per-unit certification expense reported in Field CERTFEEU. We also provide in Exhibit C-9 supporting source documentation to support the per-unit expenses reported in Field CERTFEEU.

Appx2352. Exhibit C-9 also failed to provide the required regulatory explanation of why SMPC's submitted allocation methodology did not cause distortions to the sales data. Appx2752–2785. Subsequently, when SMPC was explicitly asked to explain why it did not cause distortions, SMPC demurred, stating only that:

NONCONFIDENTIAL

> Because SMPC pays its certification fees to outside vendors after SMPC's production and sale of the merchandise under review, the company cannot attribute individual certification-related expenses to individual sales invoices. The expense-allocation provided is the most accurate basis on which SMPC is able to report POR certification expenses using the books and records the company maintains in the normal course of business.

Appx3654. SMPC's statement is self-serving, without substance, and failed to address the Department's specific inquiry as to why the allocation it provided was not distortive. SMPC never addressed in its administrative case brief the specific deficiencies noted by the Department, and failed to provide any reasons for why it believed its allocation methodology was not distortive. Appx5939, Appx5949-5953. This alone is enough to support the Department's determination to reject SMPC's allocation methodology.

## B. Substantial Record Evidence Supports the Department's Determination That SMPC's Allocation Methodology Is Distortive

SMPC argues that the Department's decision to use a POR-wide allocation methodology in place of SMPC's reported certification expenses is unsupported by substantial evidence. SMPC Br. at 11.

NONCONFIDENTIAL

SMPC also argues that it was "unclear" why the Department found its allocation method to be distortive or inaccurate. *Id.* In both the *Preliminary Results* and the *Final Results*, however, the Department explains that SMPC's allocation is distortive because of timing differences between when SMPC produces and sells cylinders and when it records the certification expenses associated with those sales, which creates monthly fluctuations in SMPC's reported certification expenses. Appx1025, Appx1323. The significant monthly fluctuations in SMPC's allocations is demonstrated in Attachment 1 hereto. Attachment 1 provides the total amount of certification fees that SMPC recorded in each market by month, how SMPC allocated these expenses, and how the Department ultimately allocated the expenses. *See* Attachment 1.

The record demonstrates that SMPC's methodology does misallocate expenses, and the Department cited to this evidence to support its determination. The Department points to an example of two months of expenses being allocated to a single month and no expenses allocated to other months. Appx1323 (citing Appx5605-5636). This demonstrates the distortive effect of SMPC's reported allocation methodology because **[**

NONCONFIDENTIAL

] of SMPC's cylinders incur certification expenses. Appx5657-5700. SMPC's methodology allocates no certification expenses to certain cylinders and disproportionately assigns greater expenses to other cylinders.

Additionally, the Department's cited exhibits demonstrate that SMPC's monthly allocation methodology allocates certification expenses for [                                                                    ]. For example, SMPC reported certification expenses for U.S. sales [

                                                    ]. *See* Appx5607; Attachment 1. SMPC calculated this expense ratio by allocating [

                            ]. *See* Appx5611 ([

                        ]). However, the [

                        ]. *See* Appx5630. Thus, to calculate the monthly certification expense ratio for its U.S. sales in [

-15-

]. *See* Appx5611. This misallocates expenses because SMPC sold [                    ] cylinders in the United States in [                    ] and [                    ] cylinders in [                    ]. Appx5611.

Another example of how SMPC's allocation method caused distortions is months where SMPC reported zero certification expenses. For example, SMPC reported [                    ]. *See* Appx5607; Attachment 1. However, [                    ]. *See* Appx5707-5708 (citing July 22 SBCQR at file smpcus03 (SEQU [                    ]). [                    ], SMPC's monthly methodology caused "distortions" and "inaccuracies," and is therefore not an acceptable allocation methodology. *See* 19 C.F.R. § 351.401(g).

-16-

Accordingly, the Department's determination that SMPC's allocation methodology is distortive is supported by substantial evidence on the record.

### III.    *NSK Ltd.* Does Not Support the Plaintiff's Claim

SMPC erroneously argues that the Federal Circuit's opinion in *NSK Ltd.* supports its claim that the Department's determination is not in accordance with law. SMPC Br. at 12-14. In *NSK Ltd.*, the Federal Circuit upheld the Department's determination that a respondent's reporting methodology was distortive. *NSK Ltd. v. United States*, 510 F.3d 1375, 1382 (Fed. Cir. 2007). The billing adjustments at issue in *NSK Ltd.* were customer-specific, incurred over time periods that did not correspond to the period of review, and only applied to specific models of products. *Id.* at 1380. The billing adjustments were potentially distortive because they allowed the respondent to shift the adjustments between POR sales and non-POR sales, and between subject and non-subject merchandise, and *the Department found actual evidence of distortion caused by the allocation. Id.* at 1381-82. SMPC argues that its certification expenses related only to expenses "incurred during the POR and on sales of subject merchandise." SMPC Br. at 14.

**NONCONFIDENTIAL**

As demonstrated above, however, SMPC's certification expenses are typically recorded [

], so certification expenses SMPC recorded [                                         ] are almost certainly [

]. As another example, SMPC recorded the certification expenses related to its U.S. sales in [

] *See* Appx5709 (citing CQR at Exh. C-9 Part 4 and July 22 SBCQR at Exh. SSBCQ-1).

SMPC's reported certification expenses are [

]. For example, SMPC calculates the certification expense ratio for U.S. sales in [                                ] using a U.S. sales denominator of [

] *Compare* Appx5611 *with* Appx2383.

Even if SMPC's assertion that the certification expenses at issue here were all incurred during the POI and all related to subject

merchandise, SMPC's allocation methodology is still distortive. *See* Appx1025, Appx1323. SMPC's allocation of multiple months of certification expenses to one month's sales and no expenses to other months has a distortive effect on the normal value and the dumping margin. Further, just as in *NSK Ltd.*, the Department also found *actual distortion* as a result of SMPC's allocations. *See* Appx1025, Appx1323 Accordingly, *NSK Ltd.* supports the Department's determination that SMPC's allocation methodology was distortive.

Finally, *NSK Ltd.* notes that the Department cannot accept billing adjustments on an allocated basis if the respondent does not demonstrate that it is not distortive, which SMPC failed to do here. *See id.* at 1382. Accordingly, the Court should sustain the Department's rejection of SMPC's distortive allocation methodology.

**NONCONFIDENTIAL**

**CONCLUSION**

For the foregoing reasons, Worthington respectfully requests that the Court sustain the Department's *Final Results* and deny plaintiff's and plaintiff-intervenor's motions for judgment on the agency record.

<u>/s/ Matthew G. Pereira</u>
PAUL C. ROSENTHAL
R. ALAN LUBERDA
DAVID C. SMITH, JR.
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Worthington Industries

December 14, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH COURT OF INTERNATIONAL TRADE</u>
## <u>STANDARD CHAMBERS PROCEDURES</u>

Pursuant to this Court's Order dated June 17, 2022 (ECF No. 28), setting the word limitation to the Response Brief of Worthington Industries ("Defendant-Intervenor") to 7,000 words, counsel for Defendant-Intervenor certifies that this Response contains 3,599 words, including footnotes and Attachment 1. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

Respectfully submitted,

<u>/s/ Matthew G. Pereira</u>
PAUL C. ROSENTHAL
R. ALAN LUBERDA
DAVID C. SMITH, JR.
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to the Worthington Industries

Dated:  December 14, 2022

# ATTACHMENT 1

| Month | US Certification Fees Recorded | USA revenue (Baht) | SMPC US CERTFEE Allocation % | DOC US CERTFEE Allocation % | Domestic Certification Fees Recorded | Domestic revenue (Baht) | SMPC HM CERTFEE Allocation % | DOC HM CERTFEE Allocation % |
|---|---|---|---|---|---|---|---|---|
| Sep-18 | [ | | | | | | | ] |
| Oct-18 | [ | | | | | | | ] |
| Nov-18 | [ | | | | | | | ] |
| Dec-18 | [ | | | | | | | ] |
| Jan-19 | [ | | | | | | | ] |
| Feb-19 | [ | | | | | | | ] |
| Mar-19 | [ | | | | | | | ] |
| Apr-19 | [ | | | | | | | ] |
| May-19 | [ | | | | | | | ] |
| Jun-19 | [ | | | | | | | ] |
| Jul-19 | [ | | | | | | | ] |
| Aug-19 | [ | | | | | | | ] |
| Sep-19 | [ | | | | | | | ] |
| Oct-19 | [ | | | | | | | ] |
| Nov-19 | [ | | | | | | | ] |
| Dec-19 | [ | | | | | | | ] |
| Jan-20 | [ | | | | | | | ] |
| Feb-20 | [ | | | | | | | ] |
| Mar-20 | [ | | | | | | | ] |
| Apr-20 | [ | | | | | | | ] |
| May-20 | [ | | | | | | | ] |
| Jun-20 | [ | | | | | | | ] |
| Jul-20 | [ | | | | | | | ] |
| Aug-20 | [ | | | | | | | ] |
| Sep-20 | [ | | | | | | | ] |
| Total POR | [ | | | | | | | ] |

Source: Appx5607-5611 (July 22 SBCQR at Exh. SSBCQ-1); Appx 10235 (Prelim. Calculation Memo. at 4).