## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| SAHAMITR PRESSURE CONTAINER PLC., <br><br>        Plaintiff, <br><br> and <br><br> WORLDWIDE DISTRIBUTION, LLLP, <br><br>        Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br>        Defendant, <br><br> and <br><br> WORTHINGTON INDUSTRIES, <br><br>        Defendant-Intervenor. | Court No. 22-00107 |

## REPLY IN SUPPORT OF PLAINTIFF's RULE 56.2 MOTION
## FOR JUDGMENT UPON THE AGENCY RECORD

Jay C. Campbell
Ron Kendler
Danica Harvey

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

February 21, 2024

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   ARGUMENT ..................................................................... 1

  A.  SMPC Revised Its Allocation Methodology Per the
      Department's Instructions and Did Not Fail to Satisfy
      Any Burden under 19 C.F.R. § 351.401(g)(2) ..................... 2

  B.  The Department Unreasonably Rejected SMPC's
      Reported Allocation Methodologies as "Distortive" ........... 5

III.  CONCLUSION .................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allegheny Ludlum Corp. v. United States*,
    346 F.3d 1368 (Fed. Cir. 2003) ...................................................................10, 11

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*,
    412 U.S. 800 (1973) ...................................................................................................11

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States*,
    426 F. Supp. 3d 1395 (Ct. Int'l Trade 2020) .......................................................10

*Chr. Bjelland Seafoods A/S v. United States*,
    19 C.I.T. 35 (1995) ....................................................................................................9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ......................................................................................................8

*Norsk Hydro Canada, Inc. v. United States*,
    472 F.3d 1347 (Fed. Cir. 2006) ...............................................................................3

*SEC v. Chenery*,
    318 U.S. 80 (1943) ......................................................................................................9

*Timken U.S. Corp. v. United States*,
    421 F.3d 1350 (Fed. Cir. 2005) ................................................................................8

*USX Corp. v. United States*,
    655 F. Supp. 487 (Ct. Int'l Trade 1987) ...............................................................9

*Vinh Hoan Corp. v. United States*,
    179 F. Supp. 3d 1208 (Ct. Int'l Trade 2016) .......................................................10

*Weishan Hongda Aquatic Food Co. v. United States*,
    273 F. Supp. 3d 1279 (Ct. Int'l Trade 2017) .......................................................10

## STATUTES AND REGULATIONS

19 U.S.C. § 1677m(i)(1) ............................................................................................3

28 U.S.C. § 2637(d) ................................................................................................10

19 C.F.R. § 351.401(g)(2) ...................................................................................2, 5, 6

# I.    INTRODUCTION

Plaintiff Sahamitr Pressure Container Plc. ("SMPC") replies to Defendant United States' Response to Plaintiff's and Plaintiff-Intervenor's Rule 56.2 Motions (ECF 30) ("Def. Br.") and Defendant-Intervenor Worthington Industries' Response to Plaintiff and Plaintiff-Intervenor's Rule 56.2 Motions (ECF 33, 34) ("Worthington Br.").[1]

# II.    ARGUMENT

In its initial brief, SMPC demonstrated that the determination by the International Trade Administration of the Department of Commerce ("Department") to use a period-of-review ("POR") allocation for SMPC's certification expenses, instead of SMPC's more specific expenses reported by market and by month, was unsupported by substantial evidence and otherwise not in accordance with law.

In response, Defendant and Defendant-Intervenor ("Petitioner") argue that SMPC's methodology was unreasonably distortive, brushing aside important context that SMPC's certification expenses were

---

[1] We refer to underlying documents from the record using the abbreviated names set forth in SMPC's Memorandum of Points and Authorities in Support of Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record (ECF 29) ("SMPC Br.").

reported in accordance with the Department's instructions, as requested by Petitioner. *See generally* Def. Br.; Worthington Br. As demonstrated below, the Department's handling of the certification expense issue was arbitrary and unreasonable, and should not be sustained.

### A. SMPC Revised Its Allocation Methodology Per the Department's Instructions and Did Not Fail to Satisfy Any Burden under 19 C.F.R. § 351.401(g)(2)

In arguing that SMPC failed to support its allocation of certification expenses under 19 C.F.R. § 351.401(g)(2), Defendant and Petitioner ignore important context. *See* Def. Br. at 15-17; Worthington Br. at 11-13. In particular, Petitioner—not SMPC—advocated for a revised allocation methodology. SMPC initially reported certification expenses using the Department-approved allocation methodology from the original investigation, but Petitioner insisted that the Department revise the approach multiple times in the underlying review.

In its initial questionnaire response, SMPC reported certification expenses using the POR-wide allocation method accepted in the original investigation. Appx2352, Appx2752-2785. Because the Department had verified and accepted this methodology previously, it presumptively satisfied the requirements under 19 C.F.R. § 351.401(g)(2). *See*

2

Appx3654; 19 U.S.C. § 1677m(i)(1) (requiring the Department to "verify all information relied upon in making . . . a final determination in an investigation"); *cf. Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1361 (Fed. Cir. 2006) (stating that "it would be duplicative and wasteful for later reviews to revisit matters . . . that were resolved in prior review proceedings").

Petitioner, however, argued that the original investigation methodology was insufficiently specific and urged the Department to issue a supplemental questionnaire requesting transaction-specific expense data. Appx3423-3426. Following suit, the Department issued a Supplemental Sections B-C Questionnaire directing SMPC to explain why its "allocation methodology does not cause inaccuracies or distortions." Appx3450. In response, SMPC explained that it was unable to report transaction-specific certification expenses using its records maintained in the ordinary course of business; reminded the Department that its POR-wide allocation had been accepted in the original investigation; and provided additional documentation to support the methodology (including an SMPC purchase order for certification

3

services, the service provider's invoice, and the corresponding accounting entries).  *See* Appx3654, Appx3834-3842.

Persisting, Petitioner next asked the Department to instruct SMPC to report market-specific and monthly-specific certification expenses. Appx4388.  The Department then issued SMPC a ***second*** Supplemental Sections B-C Questionnaire, this time instructing SMPC to "calculate a monthly, per unit certification expense for the POR for the U.S. and, separately, the home market."  *See* Appx5587.  SMPC fully responded to the Department's new instructions and request for information, providing (1) a list of all vendors that provided certification services for SMPC during the POR; (2) details on which vendors provided certification services in which markets; (3) a calculation worksheet in which SMPC derived monthly certification expenses for all home-market and U.S. sales; (4) a narrative explaining how SMPC's calculation worksheet ties to the total POR certification expenses recorded in the company's general ledger; (5) copies of invoices, accounting records, and proof-of-payment documentation to support the largest certification expenses incurred in the home and U.S. markets during the POR; and (6) revised sales databases incorporating the separate monthly, per-unit

certification expenses for the U.S. and home markets.  *See* Appx5596-5597, Appx5605-5636.

Under these circumstances, SMPC was not under any obligation to support or explain the allocation methodology pursued by Petitioner (and requested by the Department in the Second Supplemental Sections B-C Questionnaire) under 19 C.F.R. § 351.401(g)(2).  The regulation states that "*{a}ny party* seeking to report an expense . . . on an allocated basis" must demonstrate why the allocation methodology used is as specific as feasible and does not cause inaccuracies or distortions.  19 C.F.R. § 351.401(g)(2) (emphasis added).  SMPC, however, was not the party "seeking to report an expense" using monthly and market-specific allocations.  Petitioner was.  SMPC simply followed the Department's instructions.  In doing so, SMPC reported certification expenses on "as specific a basis as {was} feasible" based on its records.  19 C.F.R. § 351.401(g)(2).

## B.     The Department Unreasonably Rejected SMPC's Reported Allocation Methodologies as "Distortive"

The Department's handling of the certification-expense issue was unreasonable and unsupported by substantial evidence.  The Department abandoned an allocation methodology it had previously

accepted, requested more specific information at Petitioner's insistence, and ultimately rejected the more specific methodology when Petitioner suggested yet another approach.  In the end, as established below, the Department failed to provide a reasonable justification for rejecting more specific, monthly-based allocations, and failed to articulate why the allocation method chosen was more accurate than either the alternative or original allocation method proposed by SMPC.

The Department found that the monthly and market-specific allocation method for certification expenses that SMPC reported was distortive "due to timing differences between when SMPC produces and sells cylinders and when it records the certification expenses associated with those sales."  Appx1323; *see also* Appx1025.  Viewed in context, the Department's position is arbitrary and unreasonable.  The Department raised concerns that the "timing differences create monthly fluctuations in SMPC's reported certification expenses{,}" but such differences are the point of the regulatory requirement to use an allocation "calculated on as specific a basis as is feasible" in the first place.  19 C.F.R. § 351.401(g)(2).  For this reason, the Department's initial questionnaire in this case

identifies "monthly-specific basis" as an example of an allocation "calculated on as specific a basis as is feasible . . . ."  Appx6027.

Moreover, SMPC already had explained to the Department in its response to the First Supplemental Sections B-C Questionnaire that it "pays its certification fees to outside vendors *after* SMPC's production and sale of the merchandise under review," Appx3654 (emphasis added), yet the Department still instructed SMPC (at Petitioner's urging) to report monthly, per-unit certification expenses, *see* Appx5587.  *See also* Appx4388 ("Clearly, reporting market- and monthly-specific certification expenses *is* feasible.").  In other words, the Department was aware that monthly certification expenses could vary due to timing differences, which, presumably, was the reason for requesting such a more "specific" allocation basis in the first place.  It was only after SMPC reported its certification expenses on a monthly- and market-specific basis (and Petitioner could test the impact on the dumping margin) that Petitioner backtracked and argued for POR-wide allocations.  *See* Appx5707.

Given these circumstances, the Department's decision to reject month-specific allocations "due to timing differences" rings hollow. Because Commerce failed to draw a "rational connection between the

facts found and the choice made{,}" its decision to reject month-specific allocations is unsupported by substantial evidence. *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Department also unreasonably rejected an alternative allocation that SMPC proposed in its case brief to address the purported concerns about "timing differences." Noting that the gaps in monthly certification expenses were "minor"—in fact, out of the 25 months of certification expenses reported, only a handful in each market had zero expenses, *see* Appx5607—SMPC proposed that the Department use "the POR averages derived for the preliminary results as proxies" for the few months with zero certification expenses, "while retaining . . . the remainder of SMPC's market- and month-specific certification expense data." Appx5952. In response, the Department unreasonably concluded that SMPC's "revised method continues to fail to account for months in which certification expenses are overreported . . . ." Appx1324. As demonstrated above, however, this rationale is nonsensical, given that the antidumping questionnaire itself ***presumes*** differences based on

timing when it directs respondents to "demonstrate that the allocation is calculated on as specific a basis as is feasible (*e.g.*, on a customer-specific basis, product-specific basis, ***and/or monthly-specific basis***, etc.) . . . ." Appx6027 (emphasis added).  A determination based on inadequate reasoning cannot survive the "substantial evidence" standard of review. *See Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) (citing *USX Corp. v. United States*, 655 F. Supp. 487, 492 (Ct. Int'l Trade 1987)).

Otherwise, the Department failed to explain why the POR-wide allocation method chosen would be more accurate than use of the alternative method SMPC proposed in its case brief.  *See* Appx1324. Instead, Commerce simply stated—in conclusory fashion—that it "determined to continue to rely on the POR-wide allocation method that Commerce relied upon in the *Preliminary Results*." Appx1324.  "{T}he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *SEC v. Chenery*, 318 U.S. 80, 94 (1943).  Nor did the Department explain why it had abandoned the allocation

methodology it accepted in the original investigation.[2]    *See*, *e.g.*,

*Allegheny Ludlum Corp. v. United States,* 346 F.3d 1368, 1373 (Fed. Cir.

---

[2]    The Government claims that because SMPC did not "argue that Commerce {was} required to justify this change from prior practice" (*i.e.*, from the original investigation methodology to a more specific, month-and market-specific methodology), and did not cite to the issue in its case brief, "any argument before this Court that Commerce must justify the change to SMPC's certification fees from the original investigation is waived." Def. Br. at 12, n.1. The Government is correct that SMPC did not raise the issue of its original certification allocation methodology in its case brief, but its assertion of waiver, too, is devoid of context; the issue of the Department's explanation (or lack thereof) is a live one.

As an initial matter, 28 U.S.C. § 2637(d) states that the Court "shall, **where appropriate**, require the exhaustion of administrative remedies" (emphasis added). Thus, "whether a party is required to exhaust its administrative remedies is within the court's sound discretion." *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States*, 426 F. Supp. 3d 1395, 1410 (Ct. Int'l Trade 2020) (citations omitted). For example, the Court has found it inappropriate to require exhaustion where exhaustion would be futile or would require a party "to speculate as to one of many courses the agency might take." *Vinh Hoan Corp. v. United States*, 179 F. Supp. 3d 1208, 1226-27 (Ct. Int'l Trade 2016); *see also Weishan Hongda Aquatic Food Co. v. United States*, 273 F. Supp. 3d 1279, 1288 (Ct. Int'l Trade 2017).

Here, where the Department (1) made clear it considered SMPC's original methodology to be insufficiently specific; and (2) requested the more detailed expense information (which SMPC submitted), any argument that the Department should have reverted to the original methodology would have been either futile or speculative. This is particularly evident given that the Department already had rejected SMPC's attempt to support the original allocation method in its response to the First Supplemental Sections B-C Questionnaire. *See* Appx3654.

10

2003) ("Commerce is permitted to deviate from {its} past practice, at least where it explains the reason for its departure") (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973)).

Overall, the Department rejected all three of SMPC's expense allocation methodologies—namely, a POR-wide method that the Department had previously accepted; a market-by-month method that the Department had specifically instructed SMPC to use, which relied on the most specific and accurate data available; and a proposed hybrid alternative that accounted for the Department's purported concerns while continuing to use the most specific data available—in favor of Petitioner's proposed POR-wide alternative. The Department's decision was unreasonable and cannot be sustained as supported by substantial evidence.

## III.    CONCLUSION

Plaintiff respectfully requests that the Court:

1)       Enter judgment in favor of Plaintiff;

---

Moreover that "Commerce is required to justify this change from its prior practice{,}" *see* Def. Br. at 12 n.1., is a binding requirement on the agency regardless of whether an argument is raised by a party. *See, e.g., Allegheny Ludlum Corp. v. United States,* 346 F.3d 1368, 1373 (Fed. Cir. 2003).

2)      Hold and declare that the Department's failure to use SMPC's reported allocation method for certification expenses in the *Final Results* is unsupported by substantial evidence and otherwise not in accordance with law;

3)      Remand this matter to the Department to issue revised final results in conformity with the Court's decision; and

4)      Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

WHITE AND CASE LLP

 /s/ Jay C. Campbell
Jay C. Campbell
Ron Kendler
Danica Harvey
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Sahamitr Pressure
Container Plc.

Date:  February 21, 2024

12

## CERTIFICATE OF COMPLIANCE

I, Jay Campbell, certify that the attached brief complies with the word limitation requirement, as stated in the Standard Chambers procedures. The word count for Plaintiff's Reply Brief, as computed by the White & Case word processing system (Microsoft Word 2016), is 2,177.

/s/ Jay C. Campbell
Jay C. Campbell