**Slip Op. 24-54**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

————————————

**Court No. 22-00107**

————————————

SAHAMITR PRESSURE CONTAINER PLC.,

*Plaintiff*,

and

WORLDWIDE DISTRIBUTION, LLLP,

*Plaintiff-Intervenor*,

v.

UNITED STATES,

*Defendant*,

and

WORTHINGTON INDUSTRIES,

*Defendant-Intervenor*.

————————————

Before: M. Miller Baker, Judge

### OPINION

[Sustaining the Department of Commerce's final determination.]

Dated: May 2, 2024

*David E. Bond*, *Ron Kendler*, and *Danica Harvey*, White & Case LLP of Washington, DC, on the briefs for Plaintiff.

*Gregory S. Menegaz*, *J. Kevin Horgan*, and *Alexandra H. Salzman*, deKieffer & Horgan, PLLC, of Washington, DC, on the briefs for Plaintiff-Intervenor.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Tara K. Hogan*, Assistant Director; and *Alison S. Vicks*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, on the brief for Defendant. Of counsel on the brief was *Spencer Neff*, Attorney, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Paul C. Rosenthal*; *R. Alan Luberda*; *David C. Smith, Jr.*; and *Matthew G. Pereira*, Kelley Drye & Warren LLP of Washington, DC, on the brief for Defendant-Intervenor.

*Baker*, Judge: In this antidumping case, a foreign producer of propane canisters and a domestic importer challenge the Department of Commerce's recalculation of the former's proffered sales expenses. Finding the agency's methodology supported by substantial evidence, the court sustains it.

I

This matter arises from a Commerce order imposing tariffs on propane canisters. *Steel Propane Cylinders from the People's Republic of China and Thailand: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Orders*, 84 Fed. Reg. 41,703 (Dep't Commerce Aug. 15, 2019). Sahamitr Pressure Container PLC, a Thai producer

and exporter, and Worthington Industries, a domestic manufacturer, each requested an administrative review of that order as it pertains to Thailand. Appx1007; *see also Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 85 Fed. Reg. 47,167, 47,168 (Dep't Commerce Aug. 4, 2020).

The Department obliged and opened a review covering a 19-month period in 2019 and 2020. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 63,081, 63,085 (Dep't Commerce Oct. 6, 2020). It selected Sahamitr as the sole respondent. Appx6013.

As relevant here, Commerce requested that Sahamitr report sales costs using a transaction-specific method and cautioned that providing such information on an "allocated basis (e.g., on an average basis)" was permissible only when those expenses could not "be tied to a specific sale." Appx6027. The Department further warned that allocated reporting would be acceptable only if the company could "demonstrate that the allocation is calculated on as specific a basis as is feasible (e.g., on a customer-specific basis, product-specific basis, and/or monthly-specific basis, etc.) *and* is not unreasonably distortive." *Id.* (emphasis added).

Sahamitr nonetheless reported its certification expenses[1] for U.S. sales on an allocated basis by applying

---

[1] Third parties test and certify the canisters as safe for use. *See* ECF 29-1, at 3.

a "certification-fee ratio" to "customers' gross unit prices to calculate the [reported] per-unit certification expense." Appx2352. The company did not explain why it couldn't disclose such costs using a transaction-specific system or why its method wasn't distortive.

At Worthington's prompting, Commerce directed Sahamitr to explain why it "cannot report the [certification] price adjustment or expense on a more specific basis" and why its "allocation methodology does not cause inaccuracies or distortions." Appx3450.

The company responded that it

> pays its certification fees to outside vendors after [its] production and sale of the merchandise under review, [and] the company cannot attribute individual certification-related expenses to individual sales invoices. The expense-allocation provided is the most accurate basis on which [the company] is able to report [period-of-review] certification expenses using the books and records the company maintains in the normal course of business . . . .

Appx3654. Sahamitr also observed that "the Department accepted this approach in the underlying . . . investigation." *Id*. The company again, however, failed to explain why its allocation method did not cause distortions.

Once again at Worthington's importuning, the Department then requested that Sahamitr "calculate a monthly, per unit, certification expense for the [period of review] for the U.S., and, separately, the home

market." Appx5587. It responded with a calculation that showed wide fluctuations in costs from month to month. Appx5607.

In its preliminary determination, Commerce found that Sahamitr's (second) proffered allocation of its certification costs was distortive

> due to timing differences between when [the company] produces and sells cylinders and when it records the certification expenses associated with those sales. These timing differences create monthly fluctuations in [Sahamitr's] reported certification[] expenses (*e.g.*, two months of expenses allocated to a single month and no fee expenses allocated to other months).

Appx1025. Thus, the Department "calculated a [period-of-review]-wide certification expense ratio . . . rather than relying on [the company's] reported allocation methods." *Id.* Commerce carried over that analysis to its final determination, Appx1323–1324, which (combined with other unchallenged aspects of that decision) resulted in a dumping margin of 13.89%, Appx1630.

## II

Invoking jurisdiction conferred by 28 U.S.C. § 1581(c), Sahamitr sued under 19 U.S.C. § 1516a(a)(2)(B)(iii) to challenge Commerce's final determination. ECF 2. Worldwide Distribution LLLP, a domestic importer of Sahamitr's propane canisters, intervened as a plaintiff, ECF 23, and Worthington intervened in support of the government, ECF 18.

Sahamitr (ECF 29) and Worldwide (ECF 30) both moved for judgment on the agency record. *See* USCIT R. 56.2. The government (ECF 31) and Worthington (ECF 33) opposed. Sahamitr (ECF 58) and Worldwide (ECF 60) replied. The court decides the motions on the papers.

In § 1516a(a)(2) actions such as this, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

### III

To determine whether merchandise is being dumped in the U.S., the Tariff Act of 1930, as amended, requires Commerce to figure out the product's "normal value," 19 U.S.C. § 1677b(a)—the home

market price, *see Hung Vuong Corp. v. United States*,
483 F. Supp. 3d 1321, 1334 n.6 (CIT 2020)—and then
compare that figure to the "export price or constructed
export price" at which the product is sold to the im-
porter, *see id.* at 1334 n.34 (explaining "export price"
and "constructed export price"). The Act further di-
rects the Department to adjust the normal value of
such goods by the amount of "any difference" between
that figure and the export price that "is established to
the satisfaction" of the agency "to be wholly or partly
due to . . . differences in the circumstances of sale." *Id.*
§ 1677b(a)(6)(C)(iii).

As described above, Sahamitr sought such an ad-
justment for costs associated with obtaining the requi-
site safety certifications for its propane cylinders. The
Department requires that expenses be reported on a
transaction-specific basis except when doing so "is not
feasible, provided the Secretary is satisfied that the al-
location method used does not cause inaccuracies or
distortions." 19 C.F.R. § 351.401(g)(1). When a re-
spondent uses an allocated, rather than transaction-
specific, method, that party has the burden of showing
that the "allocation is calculated on as specific a basis
as is feasible" and "explain[ing] why the allocation
methodology used does not cause inaccuracies or dis-
tortions." *Id.* § 351.401(g)(2).

Sahamitr and Worldwide argue that the former's
recalculation of its certification expenses (performed
at Commerce's request) was as specific as feasible
given the company's records. *See* ECF 29-1, at 10–11;
ECF 30-1, at 4–5; *see also* 19 C.F.R. § 351.401(g)(3) (re-
quiring the Department to evaluate the feasibility of

transaction-specific reporting based on the "records maintained by the party in question in the ordinary course of its business"). They also contend that the company's recalculation of its expenses was more specific than the period-of-review-wide recalculation Commerce adopted, and that the agency violated 19 C.F.R. § 351.401(g)(1)–(2) by choosing a less-specific calculation methodology. ECF 29-1, at 10–11; ECF 30-1, at 4–5.[2]

Sahamitr and Worldwide misapprehend the regulation, which requires the "*party* seeking to report an expense . . . on an allocated basis" to do so "on as specific a basis as is feasible." 19 C.F.R. § 351.401(g)(2) (emphasis added). Commerce, on the other hand, "is not required to accept [expense] adjustments on an allocated basis." *NSK Ltd. v. United States*, 510 F.3d 1375, 1382 (Fed. Cir. 2007) (citing 19 C.F.R. § 351.401(g)(1)). Instead, as the "master of antidumping law," the Department has wide discretion to "select[] and develop[] proper methodologies." *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (quoting *Daewoo Elecs. Co. v. United States*, 6 F.3d 1511, 1516 (Fed. Cir. 1993)).

Here, the Department exercised that discretion by selecting an allocation method that provided Sahamitr

---

[2] In its reply brief, Sahamitr argues for the first time that it was unreasonable for the Department to reject the company's initial expense calculation for this review as insufficiently specific when the agency previously accepted an identical methodology in its original investigation. ECF 58, at 5–6, 9–10. The court declines to entertain this new argument.

the opportunity to obtain a price adjustment for certification expenses, while avoiding the distortions reflected in the company's recalculation. *See* Appx1324 (explaining that Sahamitr's recomputation "continues to fail to account for months in which certification expenses are overreported (*e.g.*, the revised method continues to allocate multiple months of expenses to a single month)").

That brings us to the elephant in the courtroom that neither Sahamitr's nor Worldwide's opening brief directly confronts—Commerce's finding that the former's recalculated reporting *was* distorted because it resulted in months with zeroed-out certification expenses. Appx1025. That unchallenged determination is supported by substantial evidence. As the record shows, there were significant fluctuations in Sahamitr's recalculated expenses from month to month, including some months with zero expenses. *See* Appx5607. The Department therefore reasonably applied a methodology that allowed Sahamitr's export price to be properly adjusted, but which did not feature those distortions. Appx1323–1324.

The closest Sahamitr's opening brief comes to challenging the finding that the company's monthly-based calculation was distortive is the plaintive assertion that it's "unclear why [Sahamitr's] certification expenses—reported per the Department's instructions—were so unreasonably inaccurate that an alternate allocation methodology was warranted." ECF 29-1, at 11. Commerce, however, explained precisely *why* it found that calculation distortive: The "timing differences between when [Sahamitr] produces and sells

cylinders and when it records the certification expenses associated with those sales . . . create monthly fluctuations in [the company's] reported certification[] expenses (*e.g.*, two months of expenses allocated to a single month and no fee expenses allocated to other months)." Appx1025. Sahamitr fails to articulate how or why that determination is unreasonable or otherwise not supported by substantial evidence.

The company's more thorough reply brief argues that the finding that its monthly-based calculations were distortive, Appx1025, is unreasonable because fluctuations are inherent in such computations. ECF 58, at 6–7. Similarly, it maintains that the Department unreasonably rejected "an alternative allocation that [Sahamitr] proposed in its case brief to address the purported concerns about 'timing differences.'" *Id*. at 8. The company further contends that "the antidumping questionnaire itself **presumes** differences based on timing when it directs respondents to 'demonstrate that the allocation is calculated on as specific a basis as is feasible (e.g., on a customer-specific basis, product-specific basis, **and/or monthly-specific basis**, etc.).'" *Id*. at 8–9 (boldface Sahamitr's) (quoting Appx6027).

The court rejects these new arguments, not only because they're untimely, but also because they're wrong on the merits. The regulation expressly authorizes Commerce to disregard a respondent's *allocated* expense reporting, even if it is as specific as possible, if the Department concludes that it "cause[s] inaccuracies or distortions." 19 C.F.R. § 351.401(g)(1). Contrary to Sahamitr's specificity–über alles reading, specificity

**Ct. No. 22-00107**                                              **Page 11**

in allocated reporting under the regulation is merely a means to an end, not an end in itself.

*    *    *

The court denies the motions for judgment on the agency record and sustains Commerce's final determination. A separate judgment will issue. *See* USCIT R. 58(a).

Dated:  May 2, 2024            /s/ *M. Miller Baker*
        New York, NY          M. Miller Baker, Judge